BENTON, C.J.
Nino Chet Tartarini appeals judgments of conviction in two, consolidated cases, contending that their joinder in the trial court compromised his right to be tried in each case solely on evidence germane to each case. We reverse and remand for separate new trials.
I.
“ ‘The primary “purpose of requiring separate trials on unconnected charges is to assure that evidence adduced on one charge will not be misused to dispel doubts on the other, and so effect a mutual contamination of the jury’s consideration of each distinct charge.” ’ ” Hart v. State, 70 So.3d 615, 617 (Fla. 1st DCA 2011) (quoting Garcia v. State, 568 So.2d 896, 898 (Fla.1990)). See also Crossley v. State, 596 *1187 So.2d 447, 450 (Fla.1992) (“The danger in improper consolidation lies in the fact that evidence relating to each of the crimes may have the effect of bolstering the proof of the other. While the testimony in one case standing alone may be insufficient to convince a jury of the defendant’s guilt, evidence that the defendant may also have committed another crime can have the effect of tipping the scales. Therefore, the court must be careful that there is a meaningful relationship between the charges of two separate crimes before permitting them to be tried together.”).
“ ‘[I]nterests in practicality, efficiency, expense, convenience, and judicial economy, do not outweigh the defendant’s right to a fair determination of guilt or innocence.’ ” Ellis v. State, 622 So.2d 991, 999 (Fla.1993) (quoting Wright v. State, 586 So.2d 1024, 1030 (Fla.1991)). Here, the state originally filed two informations, each alleging sexual misconduct with one of two underage girls. Then, a few weeks before trial, the state moved to consolidate on grounds the cases were “inextricably intertwined with each other.” Conceding that the two cases were not linked “in an episodic sense” and that the offenses were not alleged to have occurred in the same place, the state argued that there was a “meaningful relationship” between them, nevertheless; and that, taken together, the cases “provide[d] the entire context of the Defendant’s criminal actions against each of [the victims], how each were disclosed, then investigated, then ultimately prosecuted.” The state also asserted that evidence of the crimes committed in each case would be admissible in the trial of the other as similar fact evidence.
Over objection, the trial court granted the motion to consolidate, finding a meaningful relationship between the cases that went “beyond the mere fact that the defendant is alleged to be guilty and that he is alleged to be guilty of sexual crimes that involve two different victims.” The trial court found that all of the charged crimes allegedly occurred during the same general time period at (various) places Mr. Tar-tarini was residing at the time, and that they were allegedly committed in a similar fashion. But the trial court explicitly refrained from passing on any Williams rule question.[1]
II.
As a preliminary matter, we reject the state’s argument that Mr. Tartarini did not preserve his misjoinder argument for appeal. Trial counsel argued against consolidation, and the court made its ruling fully aware of appellant’s position. See § 924.051(l)(b), Fla. Stat. (2009) (Preserved “means that an issue, legal argument, or objection to evidence was timely raised before, and ruled on by, the trial court, and that the issue, legal argument, or objection to evidence was sufficiently precise that it fairly apprised the trial court of the relief sought and the grounds therefor.”). Cf. State v. Pruitt, 977 So.2d 604, 605 (Fla. 2d DCA 2007) (state failed to preserve issue for appeal when it did not make the argument at hearing on defendant’s motion to dismiss).
The defense provided the court with copies of cases supporting its opposition to the state’s motion for joinder, and argued against the motion at a hearing where the motion was taken up. After the court ruled on the motion, just before jury selec *1188 tion, the defense attempted to object to consolidation again. The trial court responded: “I think for purposes of an appellate court, certainly your record is [preserved, in that you objected to the joinder, you stated succinctly why, you gave me cases as to why. And so, to that extent, I think the record is certainly protected.” Additionally, on the morning before trial, the defense stated a “standing objection to proceeding to trial” on grounds of misjoinder, to which the trial court responded, “Your objections have been noted and you certainly have preserved your record in that regard.”
III.
Here, as below, appellant argues that the trial court abused its discretion by consolidating cases involving two separate victims. See Crossley, 596 So.2d at 450. On the merits, our analysis begins with the governing rule of criminal procedure, which allows informations charging “related offenses” to be consolidated for trial upon proper motion. See Fla. R.Crim. P. 3.151(b). Construing the rule, we recently said:
“[F]or joinder to be appropriate the crimes in question must be linked in some significant way. This can include the fact that they occurred during a ‘spree’ interrupted by no significant period of respite, or the fact that one crime is causally related to the other, even though there may have been a significant lapse of time. But the mere fact of a general temporal and geographic proximity is not sufficient in itself to justify joinder except to the extent that it helps prove a proper and significant link between the crimes.”
Hart, 70 So.3d at 618 (quoting Ellis, 622 So.2d at 1000 (citations omitted)). The “ ‘rules do not warrant joinder or consolidation of criminal charges based on similar but separate episodes, separated in time, which are “connected” only by similar circumstances and the accused’s alleged guilt in both or all instances.’ ” Ellis, 622 So.2d at 999 (quoting Wright, 586 So.2d at 1029).
The state argues, and the trial court concluded, that the two alleged victims’ cases have a “meaningful relationship,” indeed a “significant and unique link” because of the way in which the alleged abuse came to light and was then investigated and prosecuted. See generally Smithers v. State, 826 So.2d 916, 924 (Fla.2002). In Smithers, the supreme court upheld joinder of two murder indictments, even though the murders were not alleged to have been committed in a “ ‘spree’ interrupted by no significant period of respite,” as in Bundy v. State, 455 So.2d 330 (Fla.1984), nor to be causally related, as in Fotopoulos v. State, 608 So.2d 784 (Fla.1992). 826 So.2d at 923. The Smithers court found that joinder was appropriate based on the “unique facts” of record:
Both victims were prostitutes, both were taken from the Luxury Motel to the Whitehurst property, both had sex with Smithers inside the house, both were murdered in a similar fashion in the carport with tools apparently located in the carport, and both bodies were dragged into a pond behind the house. Both murders were committed within a ten-day time frame. Finally, both bodies were discovered at the same time and the defendant confessed to both murders in the same interview.
Id. at 924. Thus, the court found, there was “clearly a ‘meaningful relationship’ between the two crimes and they [were] without question ‘linked in some significant way.’ ” Id. Much closer to the present case were the facts in Roark v. State, 620 So.2d 237 (Fla. 1st DCA 1993). There we held the trial court erred in failing to grant Roark’s motion to sever a count of lewd *1189 and lascivious assault on E.B. from charges of sexual battery against her sister C.B., because “the offenses were related only in that they were sex offenses occurring within the same seven-month period, the victims were related to each other, and appellant allegedly was guilty.” Id. at 239.
We stated categorically in Roark that “in child sexual molestation cases, motions to sever should be granted where offenses occurred at different times and places, involving different victims.” Id. In the present case, the evidence showed that the victims (who were not related) learned of Mr. Tartarini’s alleged offense(s) against the other only when they confided in one another. The detective who investigated the offense first reported to the police learned of the other alleged victim from the first alleged victim. But there was no showing that the offenses occurred in a narrow time period. The evidence showed that, while the offenses alleged against each girl may have occurred in the same year, they could also have occurred more than a year apart. There was no showing that the offenses— as opposed to their eventual disclosure— were causally related. The trial court erred in ruling there was a “meaningful relationship” among all the crimes alleged against each victim, and that they were linked in “some significant way,” just because they came to the police’s attention at more or less the same time.
IV.
Although harmless error analysis is appropriate, the trial court’s abuse of discretion in consolidating the two alleged victims’ cases was not harmless. See Livingston v. State, 565 So.2d 1288, 1290 (Fla.1988) (misjoinder subject to harmless error analysis). The defendant in Livingston failed to show prejudice where he confessed to every crime charged, and physical evidence and eyewitness identification alike tied him to each crime. Id. at 1290-91. There was no confession in the present case: the case turned on the two victims’ credibility. We cannot say beyond a reasonable doubt that the evidence in one case did not affect the verdict in the other case. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986) (“The harmless error test ... places the burden on the state, as the beneficiary of the error, to prove ... that there is no reasonable possibility that the error contributed to the conviction.”). See also Crossley, 596 So.2d at 450; Roark, 620 So.2d at 240 (“If it was determined that misjoinder would constitute harmless error in all familial sexual battery cases where the misjoined offenses would be admissible as collateral crime evidence, then the distinctive legal standards concerning each would begin to blur.”).
The state argues that the same evidence would have been admissible as Williams rule evidence. But our supreme court explained in Robertson v. State, 829 So.2d 901, 908-09 (Fla.2002), that the tipsy coachman doctrine was — on procedural grounds — unavailable where impeachment evidence improperly admitted at trial might have been admissible as Williams rule evidence. The same procedural barrier exists in the present case. There as here the state did not obtain a ruling after filing a notice of intent to use similar fact evidence pursuant to section 90.404(2)(b), Florida Statutes, and thus “the matter was never litigated on the basis of the Williams rule, the trial court never made determinations as to whether clear and convincing evidence existed that Robertson committed the prior crime, whether the prior crime was substantially similar, or whether the prior crime was too remote so as to minimize any potential relevance.” Id. at 908.
*1190 The trial court did remark, when ruling on the motion to consolidate the cases, that the crimes were committed in a similar fashion, but, because the admissibility of this evidence under Williams “ ‘was not at issue, [Mr. Tartarini] did not have an opportunity to present evidence or arguments against the admissibility of this evidence under the Williams rule.’” Id. (quoting Robertson v. State, 780 So.2d 106, 118 (Fla. 3d DCA 2001) (Sorondo, J., dissenting)). See also Roark, 620 So.2d at 240 (finding that the standard for determining whether offenses are properly consolidated for trial is “vastly different” from the standard of when evidence of collateral crimes may be introduced, as collateral crime evidence may not become a feature of trial and the defense is entitled to a limiting instruction on the collateral crimes evidence). The trial court never ruled on the state’s Williams rule contentions.
Reversed and remanded for separate trials.
DAVIS and MARSTILLER, JJ., concur.

. At the outset of the hearing, the trial judge said he would hear arguments on the state’s motion, "[a]nd then we’ll determine, depending on what my ruling on the joinder is, we may or may not have to have a Williams rule hearing.” See Williams v. State, 110 So.2d 654 (Fla.1959).