**Gene Edward DODGE, Appellant,**

**v.**

**STATE of Florida, Appellee.**

**Nos. 4D13–2763, 4D13–2764.**

District Court of Appeal of Florida, Fourth District.

July 27, 2016.

Carey Haughwout, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Georgina Jimenez–Orosa, Senior Assistant Attorney General, West Palm Beach, for appellee.

DAMOORGIAN, J.

Gene Dodge appeals his convictions and sentences for two counts of fraudulent use of personal identification and two counts of grand theft. These convictions stemmed from two separate cases which were consolidated below and for appellate purposes. Appellant argues that consolidation was inappropriate, and we agree.[1]

*The Charges*

The State accused Appellant of participating in a scheme with his co-defendant, John Fravel, wherein they stole the identities of two victims and used the stolen identification information to fraudulently open multiple lines of credit. As a result, Appellant was charged in Case 08–17833 with one count of fraudulent use of personal information and one count of grand theft for using Victim 1's identification to take out a business line of credit. In Case 08–2119, Appellant, along with his co-defendant, was charged with two counts of fraudulent use of personal information and two counts of grand theft for using Victim 2's identity to open two credit cards.

*Consolidation*

Early on, the State moved to consolidate the two cases pursuant to Florida Rule of Criminal Procedure 3.151(b). The State argued that consolidation would prevent it from trying the same case twice as Appellant told law enforcement that the victims in both cases were in the process of purchasing his business, Mountain Candle Works. Appellant's counsel opposed the consolidation, arguing that "it's two different victims, it's two different circumstances." Ultimately, the court granted the State's motion and consolidated both of the cases against Appellant, reasoning that "each victim is part of one transaction, the purchase of [Appellant's] business."

*Trial*

Appellant and his co-defendant were tried together but with separate juries. The State's theory of the case was that Appellant and co-defendant stole the victims' identities and used their personal information to obtain lines of credit under the cover story of selling Appellant's candle company. Appellant's theory, in turn, was that unbeknownst to Appellant, his co-defendant stole the victims' identities and presented the victims to Appellant as legitimate purchasers of Appellant's business.

---

1. Appellant also argues that: (1) the court erred in denying Appellant's motion for judgment of acquittal; and (2) Appellant's convictions for fraudulent use of personal identification and grand theft relating to the same victim violate double jeopardy. We find no merit to these claims.

From there, Appellant's co-defendant, aided by loan brokers and bank staff, obtained the fraudulent lines of credit. The State's evidence established as follows.

Prior to his arrest, Appellant was a manager at a car dealership. He also owned Mountain Candle Works. His co-defendant was a convicted felon who Appellant knew for many years and classified as "freelance broker/salesperson." Co-defendant sometimes sold cars and/or candles for Appellant.

Witness testimony established that in late 2008, Appellant contacted a commercial loan broker and advised the loan broker that he had buyers lined up to purchase his candle company, but they needed financing. Appellant provided the broker with Victim 1's name and contact information. The broker called who she believed to be Victim 1 and obtained his personal information. After determining that Victim 1 was credit worthy, an associate prepared and submitted credit applications in Victim 1's name. The broker and a loan processor testified that while the application was pending, they received "constant" telephonic and text message inquiries from a man believed to be Victim 1 concerning the status of the financing. However, after hearing Victim 1's real voice, both witnesses testified that it did not match the voice of the person they spoke to.

Ultimately, Wachovia Bank issued a $50,000 line of credit guaranteed by Victim 1. $49,000 of these funds were transferred to Mountain Candle Works' business account, which was controlled by Appellant. From those funds, Appellant paid the broker's office a commission and wired $18,000 to co-defendant.

The evidence also established that two Mountain Candle Works business credit cards, one through Chase Bank and the other through Capital One, were issued in Victim 2's name pursuant to online applications. Two large transactions (a sale and a cash advance) were made to Mountain Candle Works on the card issued by Chase Bank.

Victim 1 testified that prior to finding out he was a victim of identity theft, he had no knowledge or interaction with any of the persons or entities involved in this case except Appellant. Victim 1's identity theft issues began after he purchased and financed a vehicle from the car dealership where Appellant worked. As part of the transaction, Victim 1 met with Appellant and provided the dealership with his social security number and a copy of his driver's license. Sometime later, he discovered that a $50,000 business line of credit had been issued by Wachovia Bank in his name.

Victim 2 testified that prior to finding out he was a victim of identity theft, he had no knowledge of or interaction with any of the witnesses or defendants. Victim 2's identity theft issues began after his wallet was stolen from his car. Several months later, Victim 2 discovered that the unauthorized use of his identity was used to open two Mountain Candle Works business credit cards. Victim 2 learned that he was also added as the president of Mountain Candle Works with the Florida Department of Corporations, although he had never heard of the company.

When initially questioned by law enforcement, Appellant maintained that the loan and credit cards were taken out by Victim 1 and Victim 2 to facilitate their purchase of Mountain Candle Works. He also maintained that he met the victims in person and that one of the persons he met was the same person depicted in Victim 1's driver's license photograph. However, in a subsequent statement, Appellant told investigators that he had not met the real Victim 1 and that his co-defendant must

have introduced Appellant to two men posing as the victims and used Appellant and his business to perpetrate fraud. When Appellant's co-defendant was arrested, law enforcement found Victim 1's auto-financing application and Victim 2's wallet in co-defendant's possession.

The jury found Appellant guilty of both charges alleged in Victim 1's case and of the fraudulent use of personal identification and grand theft charges stemming from Victim 2's Chase Bank credit card. The jury, however, acquitted Appellant of the fraudulent use of personal identification and grand theft charges stemming from Victim 2's Capital One credit card. This appeal follows.

*Analysis*

Appellant argues that the court erred in consolidating the cases for trial because the "two cases involved significantly different crimes against different victims which were committed at different times and places and with different methodology." [2] He maintains that this error caused him undue prejudice. The State denies that Appellant was prejudiced and also asserts that Appellant waived his argument on appeal. We agree with Appellant.

*a) Waiver*

■ The State asserts that Appellant waived any argument he had concerning the court's decision to consolidate the cases by failing to file a motion to sever under Florida Rule of Criminal Procedure 3.152.

Rule 3.152 provides, in pertinent part, that "[i]n case 2 or more offenses are improperly charged in a single indictment or information, the defendant shall have a right to a severance of the charges on timely motion." Fla. R. Crim. P.

3.152(a)(1). In turn, Rule 3.153(a) provides:

> A defendant's motion for severance of multiple offenses or defendants charged in a single indictment or information shall be made before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for such a motion, but the court in its discretion may entertain such a motion at the trial. The right to file such a motion is waived if it is not timely made.

Fla. R. Crim. P. 3.153(a).

Thus, under Rules 3.152 and 3.153, a motion to sever is required if the defendant believes the state has improperly charged the defendant via one information with separate crimes. Fla. R. Crim. P. 3.152; 3.153. The rules, however, make no mention of the need for a motion to sever when the defendant was charged via separate informations and the court later consolidated the charges. Logically, requiring a motion to sever under such circumstances makes no sense. The State's position would require the following:

**Multiple Cases Filed Against One Defendant → State Motion to Consolidate → Consolidation → Defense Motion to Sever**

Requiring a motion to sever post-consolidation would do no more than provide a mechanism for re-hashing the parties' positions on consolidation. A contemporaneous objection would accomplish the same objective in a more expedient fashion. Indeed, case law discussing preservation of a defendant's argument against consolidation makes no mention of the requirement for a motion to sever and provides that arguing against consolidation is sufficient for preservation purposes. *Tartarini v. State*, 84 So.3d 1185, 1187 (Fla. 1st DCA 2012)

---

**2.** Improper consolidation was not raised as an issue in co-defendant's appeal.

(holding that a defendant preserved his right to challenge consolidation when counsel argued against consolidation at the consolidation motion hearing).

At the hearing on the State's motion to consolidate, Appellant's counsel argued against consolidation on the grounds that "it's two different victims, it's two different circumstances." This was enough to preserve Appellant's challenge to the court's consolidation of the cases. *Id.*

### b) Merits

■ Turning to the propriety of the court's decision to consolidate the cases against Appellant, Florida Rule of Criminal Procedure 3.151(b) provides that "[t]wo or more indictments or informations charging related offenses shall be consolidated for trial on a timely motion" by either party. Offenses are "related" if "they are triable in the same court and are based on the same act or transaction or on 2 or more connected acts or transactions." Fla. R. Crim. P. 3.151(a). Interpreting this Rule, the Florida Supreme Court explained:

> There must be a meaningful relationship between or among charges before they can be tried together. In other words, the crimes must be linked in some significant way. Whether acts or transactions are connected is considered in an episodic sense. Courts may consider whether the acts or transactions are temporally or geographically associated, the nature of the crimes, and the manner in which they are committed.

*Fletcher v. State*, 168 So.3d 186, 202 (Fla. 2015) (internal citations omitted).

"The danger of improper consolidation lies in the fact that evidence relating to one crime may have the effect of bolstering the proof of the other." *Sule v. State*, 968 So.2d 99, 104 (Fla. 4th DCA 2007). Therefore, on a motion to consolidate, a

defendant's right to a fair trial takes precedent over any other relevant consideration, such as "practicality, efficiency, expense, convenience, and judicial economy." *Fletcher*, 168 So.3d at 203.

In the instant case, the trial court granted consolidation based on its conclusion that, although involving different victims and mechanisms of identity theft, the thefts of Victim 1 and Victim 2's identities were connected in the sense that they both used the fictitious purchase of Appellant's company, Mountain Candle Works, to perpetuate the theft.

In *State v. Varnum*, 991 So.2d 918, 919 (Fla. 4th DCA 2008), we considered the issue of whether charges against a mobile home salesman for grand theft and uttering a forged instrument based on the salesman's alteration of a purchase contract for the purpose of obtaining an undue payout from the purchaser's lender were "related" to grand theft charges stemming from the salesman's fraudulent retention of other victims' purchase deposits. We concluded that they were not because:

> [T]he [contract alteration] case arose out of a similar but temporally separate episode, which is connected to [the retention of deposits] case only by similar circumstances and [the defendant's] alleged guilt in all instances. Furthermore, the nature and manner of the alleged offenses differ. In the [contract alteration] case, the State alleged that [defendant] committed grand theft by forging a home purchase agreement to obtain an undue payout from the lender. By contrast, in the [retention of deposits] case, the State alleges that [the defendant] committed grand theft by robbing unwitting purchasers of their down payments for homes that he promised but never delivered.

*Id.* at 921.

Here, the two cases against Appellant arise out of similar circumstances—identi-

ty theft using Mountain Candle Works as a conduit—and are connected by Appellant's alleged guilt. However, the actual identity theft and ensuing grand thefts were quite different. They involved two different and unrelated victims whose identities were stolen in different manners and at different times. Victim 1's identity was stolen when he applied for vehicle financing while Victim 2's identity was stolen after his wallet was taken from his car. The victims' identities were also used in different manners. Victim 1's information was used to obtain a business line of credit through a loan broker and Victim 2's information was used to open credit cards via online applications. Applying our holding in *Varnum* to the instant case, the charges pertaining to Victim 1 and Victim 2 fail to satisfy the "related" test set forth in Rule 3.151. *Varnum*, 991 So.2d at 921.

 As the charges were not sufficiently related, we next address whether Appellant was prejudiced enough to warrant a new trial. Highlighting the prejudice that results from improper consolidation, the Florida Supreme Court explained:

> While the testimony in one case standing alone may be insufficient to convince a jury of the defendant's guilt, evidence that the defendant may also have committed another crime can have the effect of tipping the scales. Therefore, the court must be careful that there is a meaningful relationship between the charges of two separate crimes before permitting them to be tried together.

*Crossley v. State*, 596 So.2d 447, 450 (Fla. 1992).

Appellant's theory of the case was that his co-defendant orchestrated the whole scheme unbeknownst to Appellant. Appel-lant maintained that his co-defendant used Appellant and his business to perpetuate fraud, all the while leading Appellant to believe the victims were legitimately purchasing his business. To rebut Appellant's theory, the State presented circumstantial evidence establishing that Appellant stole Victim 1's information during Victim 1's purchase of a vehicle from Appellant. However, as to Victim 2, there is no such evidence implicating Appellant. Accordingly, Appellant was prejudiced by the consolidation because the evidence as to the Victim 1 charges may have had the effect of tipping the scales against Appellant with regard to the Victim 2 charges.

Based on the foregoing, we reverse and remand with instructions that Appellant be retried separately for the offenses he was convicted of in each case.[3]

*Reversed and remanded for separate trial as to each set of charges.*

LEVINE and FORST, JJ., concur.

---

**3.** Appellant cannot be retried on the offenses he was acquitted of pertaining to Victim 2 as this would violate principles of double jeopar-dy. *Moody v. State*, 931 So.2d 177, 180 (Fla. 2d DCA 2006).