WEBSTER, J.
 

 In these two consolidated direct criminal appeals, appellant presents three issues challenging his judgments of conviction and sentences imposed in case number 1D09-2300 for carjacking, and in case number 1D09-2302 for sexual battery, battery, kidnapping, aggravated battery with a deadly weapon and armed robbery. Without diminishing the brutal and terrifying manner in which these crimes were committed, we are constrained to reverse appellant’s convictions, vacate his sentences, and remand for new trials because the trial court abused its discretion in granting the state’s motions to join the offenses for a single trial pursuant to Florida Rule of Criminal Procedure 3.150(a). This ruling moots appellant’s remaining issues.
 

 In trial court case number 16-2007-CF-1251-AXXX-MA, appellant was charged by fourth amended information with two counts of sexual battery during which he used force likely to cause serious personal injury and/or used a deadly weapon (a BB gun), kidnapping, aggravated battery and armed robbery. In trial court case number 16-2007-CF-1250-AXXX-MA, appellant was charged with a single count of carjacking involving a different victim. The offenses occurred on January 25, 2007. In both cases, the state filed a “Motion for Joinder of Charges” claiming that the cases were “inextricably intertwined and such factual entanglement necessitate[d] their joinder so they may be tried together in order to properly introduce to the jury all relevant evidence in both cases.” Following a hearing, the trial court granted the motions without explanation, instead, attaching to its order in each case a copy of the state’s motion.
 

 Our analysis begins with the joinder provision of rule 3.150(a), which provides that “[t]wo or more offenses that are triable in the same court may be charged in the same indictment or information ... when the offenses ...
 
 are based on the same act or transaction or on 2 or more connected acts or transactions.”
 
 (Emphasis added.) However, where joinder is concerned, our supreme court has cautioned that “interests in practicality, efficiency, expense, convenience, and judicial economy, do not outweigh the defendant’s right to a fair determination of guilt or innocence.”
 
 Garcia v. State,
 
 568 So.2d 896, 898 (Fla.1990) (citing
 
 State v.
 
 
 *617
 

 Williams,
 
 453 So.2d 824, 825 (Fla.1984)).
 
 See also Ellis v. State,
 
 622 So.2d 991, 999 (Fla.1993) (quoting
 
 Wright v. State,
 
 586 So.2d 1024, 1030 (Fla.1991), which, in turn, quoted Garcia);
 
 Crossley v. State,
 
 596 So.2d 447, 449-50 (Fla.1992) (holding that while “[t]he justifications for the consolidation of charges are convenience and the preservation of the courts’ valuable resources ... practicality and efficiency cannot outweigh the defendant’s right to a fair trial,” citing
 
 State v. Vazquez,
 
 419 So.2d 1088 (Fla.1982)).
 

 Here, the state’s justification for joinder as articulated at the hearing on its motions was based on the fact that the offenses occurred on the same evening within a three or four block area of the same neighborhood, and were separated by approximately three and a half hours. The state also noted that the same BB gun was used in both offenses, and the cell phones of both victims were stolen. (The carjacking victim’s cell phone was discovered at the scene of appellant’s apprehension, while the cell phone belonging to the sexual battery victim was discovered in appellant’s belongings at the jail on the night of appellant’s arrest following the carjacking.) The state argued that the cases should be joined under either a “crime spree” or an “inseparable evidence” rationale. The state also urged that the fact that both victims had described appellant holding a similar weapon three or four hours apart was “extremely relevant” because it bolstered the credibility of the sexual battery victim.
 

 In
 
 Garcia,
 
 our supreme court observed:
 

 The applicable principles were made clear in
 
 Paul v. State,
 
 385 So.2d 1371, 1372 (Fla.1980),
 
 adopting in part
 
 365 So.2d 1063, 1065-67 (Fla. 1st DCA 1979) (Smith, J., dissenting). The primary “purpose of requiring separate trials on unconnected charges is to assure that evidence adduced on one charge will not be misused to dispel doubts on the other, and so effect a mutual contamination of the jury’s consideration of each distinct charge.” 365 So.2d at 1066.
 

 568 So.2d at 898. The court also noted that, in
 
 Paul,
 
 it had
 

 construed the “connected acts or transactions” requirement of rule 3.150 to mean that the acts joined for trial must be considered “in an episodic sense[.] [T]he rules do not warrant joinder or consolidation of criminal charges based on similar but separate episodes, separated in time, which are ‘connected’ only by similar circumstances and the accused’s alleged guilt in both or all instances.”
 
 Paul,
 
 365 So.2d at 1065-66.
 

 Id.
 

 In addition, in
 
 Crossley,
 
 the supreme court expressed its concern that
 

 [t]he danger in improper consolidation lies in the fact that evidence relating to each of the crimes may have the effect of bolstering the proof of the other. While the testimony in one case standing alone may be insufficient to convince a jury of the defendant’s guilt, evidence that the defendant may have also committed another crime can have the effect of tipping the scales. Therefore, the court must be careful that there is a
 
 meaningful relationship
 
 between the charges of two separate crimes before permitting them to be tried together.
 

 596 So.2d at 450 (emphasis added). In
 
 Crossley,
 
 the court concluded that the two episodes of armed robbery jointly tried “were entirely independent,” even though “both robberies were committed within a few hours of each other and only a few miles apart,” involved women who were alone at their places of employment (the first in her car while counting her tips, and the second standing at her cash register at a convenience store), and Crossley was
 
 *618
 
 arrested after the second robbery while driving the car stolen during the first robbery.
 
 Id.
 
 Accordingly, despite acknowledging that a trial court has discretion in deciding when to join separate crimes for trial, the court concluded that the trial court had, nonetheless, abused that discretion in refusing to sever the two charges and order separate trials.
 
 Id.
 

 Later, in
 
 Ellis,
 
 in an effort to determine the proper standard for joinder, the supreme court said:
 

 It is significant that
 
 Crossley
 
 expressly weighed a variety of factors in determining whether or not the two crimes of robbery at issue there were part of a single “episode.” On one hand, the
 
 Crossley
 
 crimes were temporally and geographically close to one another, because they were separated by less than three hours in time and only two or three miles in distance. Likewise, both offenses involved an armed robbery of a woman in a commercial establishment by a black man wearing a cap, dark sunglasses, a blue shirt or jacket, and gray shorts. On the other hand, one of the crimes involved a kidnapping, while the other did not. But most importantly the Court found that “the two episodes were entirely independent” and that “there was absolutely nothing to connect one crime with the other.”
 
 Crossley,
 
 596 So.2d at 450.
 

 622 So.2d at 999. The court considered the analysis “further illuminated” by its opinion in
 
 Bundy v. State,
 
 455 So.2d 330 (Fla.1984), which it characterized as “a classic example of an uninterrupted crime spree in which no significant period of respite separated the multiple crimes,” where the “murderous rampage” began in one location and then, “within roughly' an hour,” proceeded to another location “a few blocks away.”
 
 Id.
 
 The court then reviewed its decision in
 
 Fotopoulos v. State,
 
 608 So.2d 784 (Fla.1992), in which the defendant induced a woman under his influence to commit murder while he videotaped it, and then used the video as blackmail approximately one month later to induce her to hire a “hit man” to murder his wife. The court noted that, while there had been “a substantial lapse of time in
 
 Fotopoulos,”
 
 joinder was proper because “it was clear that the two crimes were linked in a causal sense: One was used to induce the other.”
 
 Id.
 
 at 1000. In that sense, the court observed that “one crime could not properly be understood without the other,” and the two crimes “constituted a single episode because of their obvious causal link and
 
 despite
 
 a lapse of time greater than in
 
 Bundy
 
 or
 
 Crossley.” Id.
 
 (emphasis in original). From its analysis of these earlier cases, the supreme court in
 
 Ellis
 
 “distilled” several rules:
 

 First, for joinder to be appropriate the crimes in question must be linked in some significant way. This can include the fact that they occurred during a “spree” interrupted by no significant period of respite,
 
 Bundy,
 
 or the fact that one crime is causally related to the other, even though there may have been a significant lapse of time.
 
 Fotopoulos.
 
 But the mere fact of a general temporal and geographic proximity is not sufficient in itself to justify joinder except to the extent that it helps prove a proper and significant link between the crimes.
 
 Crossley.
 

 Id.
 

 For our purposes in resolving the present issue, we conclude that the most relevant rule announced in
 
 Ellis
 
 is the last one, reiterating the pronouncement in
 
 Crossley
 
 that “the mere fact of a general temporal and geographic proximity is not sufficient in itself to justify joinder except to the extent that it helps to prove a
 
 *619
 
 proper and significant link between the crimes.”
 
 Id.
 
 Here, while the two criminal episodes were separated by only a few hours and a couple of blocks, we do not consider these factors sufficient “to prove a proper and significant link between the crimes,” even taking into consideration the fact that the BB gun was used during the commission of both crimes.
 
 See Puhl v. State,
 
 426 So.2d 1226, 1227 (Fla. 4th DCA 1983) (holding that joinder was improper where the “only similarity” between the offenses was the use of a handgun).
 
 But see Livingston v. State,
 
 565 So.2d 1288 (Fla.1988) (holding that joinder was permissible where the gun that was used in both criminal episodes was stolen in the first robbery and used to commit the second armed robbery and murder).
 

 The fact that the same gun was used does not, alone, provide the requisite “meaningful relationship,” which is established by the nature of the crimes and the manner in which they were committed, as exemplified in
 
 Smithers v. State,
 
 826 So.2d 916 (Fla.2002). In
 
 Smithers,
 
 after thoroughly analyzing the principles enunciated in
 
 Paul, Garcia, Bundy
 
 and
 
 Ellis,
 
 the supreme court concluded that, while the facts of that case did not fit squarely into the “spree” (Bundy) or “causal link”
 
 (Fo-
 
 topoulos) categories justifying joinder, joinder was, nonetheless, appropriate even though the crimes were separated by seven to ten days because the “unique facts” of that case showed that both victims were prostitutes, both were taken from the same motel to the same property where they were both murdered in a similar fashion in the carport with tools located in the carport, and their bodies were then dragged into a pond behind the house. Those facts led the court to conclude that there was a “ ‘meaningful relationship’ between the two crimes and they [were] without question ‘linked in some significant way.’ ”
 
 Id.
 
 at 924. A similar “meaningful relationship” does not exist between the commission of the criminal episodes in the instant cases, which more closely resemble the situation in
 
 Crossley
 
 than those in
 
 Bundy, Fotopoulos
 
 and
 
 Smithers.
 

 Here, the evidence was that, on January 25, 2010, at approximately 5:00 p.m., the first victim was walking home when a man came up from behind her, grabbed her arm and put something hard to her back, which she believed to be a gun. She was taken to a wooded area where her assailant raped her multiple times and hit her repeatedly with the gun. During the episode, the victim was able to fully view her attacker, whom she identified as appellant several days later from a police photo-spread. Following the attack, appellant allowed the victim to leave, while keeping her shirt, bra and cell phone. Later that evening, at about 10:00 p.m., appellant met up with his cousin. He mentioned nothing about the earlier sexual battery. Instead, he announced that he wanted to “take a car.” When the second victim emerged from her car to open the gate at the entrance to her driveway, she noticed two men standing nearby. They approached her and both pointed guns at her, demanding her car, keys, cell phone and purse. They then jumped into her car and drove off. The victim immediately called the police and described her assailants. Shortly thereafter, two deputies who had received the BOLO concerning the carjacking spotted the car parked in an apartment complex they were patrolling. They parked nearby, and ten or fifteen minutes later two individuals who fit the victim’s descriptions emerged from behind one of the buildings. When the deputies announced their presence, a chase ensued and the men were apprehended. The victim was driven to a bank parking lot in the back of a patrol car where she identified appellant and his cousin as the two men
 
 *620
 
 who had stolen her car. When the deputies conducted a search of the flight path at the apartment complex, they found two guns, one of which was appellant’s BB gun. Appellant testified on his own behalf, stating that the sexual encounter with the first victim had been consensual. During closing arguments regarding the sexual battery, defense counsel urged the jury to find appellant not guilty because the victim was not a credible witness based on testimony presented at trial. In rebuttal, the state argued that the jury could believe the first victim because the carjacking had occurred just hours later in the same neighborhood and the same weapon was used, all of which went to establish appellant’s “state of mind” that he was “on the streets robbing.”
 

 We conclude from the foregoing facts and the authoritative principles earlier discussed that the episodes here can only be described as “freestanding and distinct.”
 
 Ellis,
 
 622 So.2d at 1000. This absence of the essential “meaningful relationship” between the two criminal events is pivotal to our analysis.
 
 Crossley,
 
 596 So.2d at 450. The evidence relating to the second crime was unequivocally used to bolster the proof of the first, leading to the distinct “danger,” given the credibility issue, that the evidence of the commission of the one crime might have had the effect of “tipping the scales” in favor of conviction of the others.
 
 Id.
 
 Accordingly, we conclude, further, that the trial court abused its discretion in joining the cases for trial.
 

 The state contends that any error was harmless because some of the testimony concerning each of the criminal episodes could have been introduced in the trial of the other as similar fact evidence pursuant to section 90.404(2), Florida Statutes (2006).
 
 See Williams v. State,
 
 110 So.2d 654 (Fla.1959). However, the crimes here were distinctly different, and it cannot be said based on the present record that the few similarities were so unusual that admission under the
 
 Williams
 
 rule would be proper.
 
 See Crossley,
 
 596 So.2d at 450. Indeed, the state withdrew its
 
 Williams
 
 rule notice in anticipation of the trial court’s ruling on its joinder motions and, therefore, there are no record findings by the trial court on the subject.
 
 See generally Robertson v. State,
 
 829 So.2d 901, 907-08 (Fla.2002) (holding that “the determination of whether evidence properly may be admitted as
 
 Williams
 
 rule evidence is a highly individualized, factually intensive inquiry” and, thus, the requirement of pretrial notice allows the trial court to make the necessary “multiple determinations” before admitting
 
 Williams
 
 evidence).
 

 For the foregoing reasons, we reverse appellant’s judgments of conviction and sentences, and remand with instructions that the cases be severed for separate trials. This ruling moots appellant’s remaining two issues.
 

 REVERSED and REMANDED, with directions.
 

 BENTON, C.J., and VAN NORTWICK, J., concur.