# Supreme Court of Florida

_____

No. SC13-711
_____

**CLYDE EDWARD JOHNSON,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[April 20, 2017]

QUINCE, J.

This case is before the Court for review of the decision of the Fifth District Court of Appeal in Johnson v. State, 108 So. 3d 1153 (Fla. 5th DCA 2013), which certified conflict with the decision of the First District Court of Appeal in Floyd v. State, 87 So. 3d 45 (Fla. 1st DCA 2012). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the following reasons, we quash the decision of the Fifth District and remand for proceedings consistent with this opinion.

Clyde Edward Johnson pleaded guilty to one count of armed burglary of a dwelling, three counts of armed kidnapping, one count of attempted first-degree murder, and one count of sexual battery using force or a weapon. He was

sentenced to six concurrent life sentences. After the United States Supreme Court issued its decision in <u>Graham v. Florida</u>, 560 U.S. 48 (2010), Johnson filed a motion to correct his illegal sentences. The trial court set aside Johnson's life sentences and held an evidentiary hearing to support resentencing. On February 12, 2012, the trial judge resentenced Johnson to 100 years in prison for the first count and 40 years on each remaining count, to run concurrently. Johnson appealed the 100-year sentence. The Fifth District Court of Appeal affirmed Johnson's sentence, stating that <u>Graham</u> does not apply to term-of-years sentences. <u>Johnson</u>, 108 So. 3d at 1153-54 (citing <u>Henry v. State</u>, 82 So. 3d 1084 (Fla. 5th DCA 2012)). The Fifth District certified conflict and we granted review.

The United States Supreme Court's decision in <u>Graham</u> held that Florida's practice of sentencing juvenile offenders to life sentences for nonhomicide crimes violated the Eighth Amendment to the United States Constitution. <u>Graham</u>, 560 U.S. at 74-75. In 2014, the Legislature passed chapter 2014-220, Laws of Florida, which provided judicial review for juvenile offenders who were tried as adults and received more than 20 years' incarceration, with exceptions. Later, this Court, in a unanimous decision, decided that juveniles who receive term-of-years sentences that do not provide a meaningful opportunity for early release based on maturity and rehabilitation during their natural lives are entitled to resentencing pursuant to chapter 2014-220, Laws of Florida. <u>Henry v. State</u>, 175 So. 3d 675, 680 (Fla.

2015), cert. denied, 136 S. Ct. 1455 (2016).  Then, in Kelsey, a majority of this Court applied the reasoning in Henry to juveniles whose life sentences had been vacated pursuant to Graham, but who had not been resentenced under the new juvenile sentencing guidelines.  Kelsey v. State, 206 So. 3d 5, 8-9 (Fla. 2016).  We conclude that reading these three cases together provides that that juvenile nonhomicide offenders are entitled to sentences that provide a meaningful opportunity for early release based on demonstrated maturity and rehabilitation during their natural lifetimes and that gain time fails to meet those requirements.

In this Court's discussions of Graham, we have underscored the United States Supreme Court's emphasis on the status of the juvenile nonhomicide offender and the nature of the offense committed.  See Henry, 175 So. 3d at 678 (citing Graham, 560 U.S. at 69).  Accordingly, our focus has not been on the length of the sentence imposed, but the status of the offender and the possibility that he or she will be able to grow into a contributing member of society.  In other words, although Graham focused on life sentences as applied to juveniles, in Henry, we applied Graham's categorical rule as creating a special class of citizens, to wit: juvenile nonhomicide offenders.

Leighdon Henry, a juvenile offender who was tried as an adult, was convicted of multiple nonhomicide crimes and sentenced to life plus an additional sixty years.  Henry, 175 So. 3d at 676.  After Graham issued, Henry's life sentence

was vacated and he was resentenced to thirty years to run consecutively to the originally imposed sixty year sentence.  Id.  On appeal, we concluded "Graham prohibits the state trial courts from sentencing juvenile nonhomicide offenders to prison terms that ensure these offenders will be imprisoned without obtaining a meaningful opportunity to obtain future early release during their natural lives based on their demonstrated maturity and rehabilitation."  Id. at 680.  We reasoned that the "Supreme Court's long-held and consistent view that juveniles are different" supported the conclusion that "the specific sentence that a juvenile nonhomicide offender receives for committing a given offense is not dispositive as to whether the prohibition against cruel and unusual punishment is implicated."  Id.  Accordingly, we determined that Graham was not limited to certain sentences, but rather was intended to ensure that "juvenile nonhomicide offenders will not be sentenced to terms of imprisonment without affording them a meaningful opportunity for early release based on a demonstration of maturity and rehabilitation."  Id.  In light of this reasoning, we concluded that the Eighth Amendment, as read through Graham, requires a review mechanism for evaluating this class of offenders because "any term of imprisonment for a juvenile is qualitatively different than a comparable period of incarceration is for an adult."

- 4 -

Id. Our holding in Henry was not predicated on the term of the sentence, but on the status of, and the opportunity afforded, the offender.[1]

In Kelsey, we considered whether the remedy espoused in Henry applied to juvenile offenders who were resentenced from life to term-of-years sentences after Graham, for crimes committed before chapter 2014-220's July 1, 2014, effective date, but who did not receive the benefit of chapter 2014-220's review mechanism. Thomas Kelsey was 15 years old when he burglarized an apartment and raped the pregnant victim at knifepoint in the presence of her two small children. Kelsey, 206 So. 3d at 6. Kelsey pleaded guilty and received two life sentences and two concurrent twenty-five year terms for four nonhomicide offenses on March 26, 2010. Id. At a resentencing hearing held after the United States Supreme Court issued Graham, the trial court imposed concurrent sentences of forty-five years. Id. at 6-7. The First District affirmed. Id. On review in this Court, we opined, "After we made clear that Graham does indeed apply to term-of-years sentences, we have declined to require that such sentences must be 'de facto life' sentences for Graham to apply." Id. at 10 (citing Guzman v. State, 183 So. 3d 1025, 1026

---

1. Additionally, although not discussed in our opinion in Henry, we note that Henry's sentence would have also been subject to the same gain time provisions as Johnson. See Henry, 82 So. 3d at 1086 ("Although the time that Henry is to serve can be shortened through incentive and meritorious gain-time, under Florida law, he must serve eighty-five percent . . . .").

(Fla. 2016)).  Accordingly, we have determined that <u>Graham</u> prohibits juvenile

nonhomicide offenders from serving lengthy terms of incarceration without any

form of judicial review mechanism.

In the present case, Clyde Johnson was originally sentenced to six

concurrent life sentences and, after those sentences were set aside pursuant to

<u>Graham</u>, resentenced to one 100-year term and five concurrent forty-year terms.[2]

On appeal, where Johnson argued that the 100-year term still violated <u>Graham</u>, the

Fifth District affirmed, relying solely on its previous opinion in <u>Henry</u>, a decision

this Court reversed.  <u>See</u> <u>Henry</u>, 175 So. 3d at 680.  The <u>Johnson</u> opinion, in its

entirety, states:

> Clyde Edward Johnson challenges his 100-year sentence on a
> charge of burglary of a dwelling while armed, arguing that the
> sentence violates <u>Graham v. Florida</u>, 560 U.S. 48 (2010), as he was
> under 18 years old at the time of the offense. [FN1]  As our court has
> already rejected the argument that a term of years sentence violates
> Graham in <u>Henry v. State</u>, 82 So. 3d 1084 (Fla. 5th DCA 2012), rev.
> granted, 107 So. 3d 405 (Fla. 2012), we affirm.  We certify that this
> decision conflicts with <u>Floyd v. State</u>, 87 So. 3d 45 (Fla. 1st DCA
> 2012) and <u>Adams v. State</u>, [188 So. 3d 849] (Fla. 1st DCA 2012).
>
> > [FN1]  Johnson was originally sentenced to life on this
> > charge, and to concurrent life sentences on five related
> > charges: three counts of armed kidnapping to facilitate a
> > felony; one count of attempted first degree murder with a
> > firearm; and, one count of sexual battery using force or a
> > weapon (firearm).  All six life sentences were set aside
> > following the United States Supreme Court's decision in

---

2.  Johnson did not appeal his forty-year sentences.

Graham. The 100-year sentence challenged in this appeal was imposed at Johnson's resentencing. As for the other five counts, the trial court resentenced Johnson to concurrent 40-year sentences, which are not challenged on appeal.]

Johnson v. State, 108 So. 3d 1153, 1153-54 (Fla. 5th DCA 2013).

The Florida Corrections Code provides several forms of allowable gain time. As defined by this Court:

Gain time is allowed by the state to encourage a prisoner to mend his ways, to conduct himself in an orderly fashion while paying his debt to society and by his conduct to earn the privilege of release earlier than the terminal date fixed by his sentence. A prisoner's right to accrued gain time is not absolute but is conditioned upon satisfactory service of the sentence as required by the statute.

Nicholas v. Wainwright, 152 So. 2d 458, 461 (Fla. 1963) (citation omitted). The statutes permit the accrual, forfeiture, and reinstatement of gain time, with different rules applying based on when an offense was committed, the type of gain time available on the sentence, and the type of offense committed. See §§ 944.275, 944.28, 944.281 Fla. Stat. The Florida Department of Corrections defines gain time as "an inmate's opportunity to earn a reduction (if eligible) in his/her overall sentence imposed by the court."[3] Gain time has been in existence in Florida since 1889 and "is a tool the department uses to encourage satisfactory inmate behavior

---

3. Florida Department of Corrections, Frequently Asked Questions Regarding Gaintime, http://www.dc.state.fl.us/oth/inmates/gaintime.html (last visited Apr. 7, 2017).

and motivate program and work participation." Id.   In summary, gain time is not defined by the Florida Statutes, the Florida Department of Corrections, or this Court as an opportunity for early release based on demonstrated maturity and rehabilitation.  Instead, all three define gain time as merely an opportunity to shorten one's sentence.

Johnson's sentences were based on offenses he committed on January 5, 1990, when he was seventeen years old.  Under section 944.275, Florida Statutes, Johnson was ineligible for any gain time while he was serving life sentences. § 944.275(4)(b)3., Fla. Stat. ("State prisoners sentenced to life imprisonment shall be incarcerated for the rest of their natural lives, unless granted pardon or clemency.")  Accordingly, from the period of July 6, 1992, when Johnson was first sentenced, and February 2, 2012, when the trial court resentenced him to a term-of-years sentence, Johnson did not accrue gain time.  On his newly imposed sentence, Johnson should be eligible for basic gain time at the rate of "10 days for each month of each sentence imposed" and incentive gain time of up to 20 days, applied monthly.  See § 944.275(4)(a)-(b), Fla. Stat.  Because Johnson's offense occurred before October 1, 1995, he is not required to serve 85% of his sentence.  Id. Johnson will not be eligible for release until 2052, when he will be 80 years old.[4]

_____

4.  The Florida Department of Corrections lists Johnson's current release date as March 8, 2052.  http://www.dc.state.fl.us/appcommon/searchall.asp (last

- 8 -

Based on 2014 data, a non-Hispanic, black man of Johnson's age can expect to live to approximately age 75.[5]

On March 19, 2015, we quashed the Fifth District's decision in Henry, holding "that the constitutional prohibition against cruel and unusual punishment under Graham is implicated when a juvenile nonhomicide offender's sentence does not afford any 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation' " during his or her natural life. Henry, 175 So. 3d at 679. We provided that "Graham applies to ensure that juvenile nonhomicide offenders will not be sentenced to terms of imprisonment without affording them a meaningful opportunity for early release based on a demonstration of maturity and rehabilitation." Id. at 680 (citing Graham, 560 U.S. at 75) (emphasis added). In other words, in Henry we explained that Graham applies to term-of-years prison sentences, and that juvenile nonhomicide offenders' sentences must provide an opportunity for early release that is: (1) meaningful, (2) based on a demonstration of maturity and rehabilitation, and (3) during his or her natural life. See Henry,

---

visited April 7, 2017) (search for DC Number 614009). He will be turning 80 the year he is released if the date remains unchanged.

5. See U.S. Department of Health and Human Services, Centers for Disease Control and Prevention, National Vital Statistic Reports, Vol. 65 No. 4, June 30, 2016 at 33, table 7 (available at https://www.cdc.gov/nchs/data/nvsr/nvsr65/nvsr65_04.pdf) ("Report").

175 So. 3d at 680 ("Graham prohibits the state trial courts from sentencing juvenile nonhomicide offenders to prison terms that ensure these offenders will be imprisoned without obtaining meaningful opportunities to obtain future early release during their natural lives based on their demonstrated maturity and rehabilitation.")

The State argues that because gain time provides an opportunity for early release, Johnson's 100-year sentence does not violate Graham. However, the State's interpretation of Graham is too narrow and the question before this Court is whether the application of gain time provides an opportunity for early release that meets all three Graham requirements as articulated in Henry. Because we conclude that gain time, generally, is not based on a demonstration of maturity and rehabilitation, Johnson's sentence, even including gain time, does not provide him with a meaningful opportunity for early release during his natural life.

In Henry, a unanimous Court agreed that "the Eighth Amendment will not tolerate prison sentences that lack a review mechanism for evaluating [juvenile nonhomicide] offenders for demonstrable maturity and reform in the future . . . ." Henry, 175 So. 3d at 680 (emphasis added). In Henry, and cases like it, we therefore remanded for resentencing under the new juvenile sentencing guidelines. In Kelsey, we were asked to determine whether a juvenile offender who had already received resentencing pursuant to Graham was entitled to resentencing

- 10 -

again pursuant to the new guidelines since the post-<u>Graham</u> sentence lacked a review mechanism. <u>Kelsey</u>, 206 So. 3d at 6. This court determined that defendants such as Kelsey were entitled to resentencing. <u>Id.</u> at 11. Our reasoning in <u>Kelsey</u> demonstrates that the opportunity for release is not dispositive to a juvenile offender's right to sentencing pursuant to the new guidelines. Instead, our reasoning in <u>Kelsey</u> supports a reading of <u>Henry</u> that a juvenile offender's sentence must provide an opportunity for <u>early</u> release that is meaningful, based on a demonstration of maturity and rehabilitation, and during his or her natural life. In other words, pursuant to <u>Henry</u>, we must consider three factors when reviewing a juvenile nonhomicide offender's term-of-years sentence. Post-<u>Henry</u>, we must ensure that a juvenile nonhomicide offender does not receive a sentence that provides for release only at the end of a sentence (e.g. a 45-year sentence with no provision for obtaining early release based on a demonstration of maturity and rehabilitation before the expiration of the imposed term, such as in <u>Kelsey</u>). Secondly, we must ensure that a juvenile nonhomicide offender who is sentenced post-<u>Henry</u> does not receive a sentence which includes early release that is not based on a demonstration of rehabilitation and maturity (i.e. gain time or other programs designed to relieve prison overpopulation). Last, we must ensure that a juvenile nonhomicide offender who is sentenced post-<u>Henry</u> does not receive a sentence that provides for early release at a time beyond his or her natural life (e.g.

- 11 -

a 1,000-year sentence that provides parole-eligibility after the offender serves 100 years). To qualify as a "meaningful opportunity for early release," a juvenile nonhomicide offender's sentence must meet each of the three parameters described in Henry.

Indeed, the State's argument in its Answer Brief concedes this point. The State argues that it is not the length of the sentence given, but rather whether the juvenile offender will have some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. State's Ans. Br. at 7 ("It is not the length of the sentence given to a juvenile convicted of a nonhomicide offense that could potentially violate Graham, but rather, the fact that Florida currently has no standardized means to provide 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' "). Further, we previously acknowledged that the length of the sentence alone was not dispositive in Kelsey when we said that Kelsey's "sentence was unconstitutional not because of the length of his sentence, but because it did not provide him a meaningful opportunity for early release based on maturation and rehabilitation" during his natural life. Kelsey, 206 So. 3d at 11. Accordingly, irrespective of whether Johnson receives basic or incentive gain time to shorten his sentence, the application of gain time, alone, is insufficient to satisfy the requirements of Graham, Henry, and Kelsey.

Secondly, the State argues that Johnson's resentencing should serve as his meaningful opportunity for release because, after spending nearly twenty years incarcerated, Johnson failed to demonstrate any maturity or rehabilitation and, in fact, received numerous disciplinary actions during his imprisonment. We have previously rejected the State's argument in Kelsey; resentencing does not provide the relief required by Henry, which is resentencing pursuant to the new juvenile sentencing guidelines. Kelsey, 206 So. 3d at 11.

We conclude that Johnson's current sentence, even with gain time, exceeds his life expectancy by at least five years, and possibly 20 years. Therefore, the application of gain time does not provide him a meaningful opportunity for early release based on demonstrated maturity and rehabilitation during his natural life. Because we conclude that Johnson's 100-year sentence violates the United States Supreme Court's decision in Graham and our decisions in Henry and Kelsey, we quash the decision of the Fifth District Court of Appeal and remand for proceedings consistent with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, and LEWIS, JJ., concur.
CANADY and POLSTON, JJ., concur in result only.
LAWSON, J., recused.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

Fifth District - Case No. 5D12-831

(Lake County)

Baya Harrison, III, Monticello, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; and Wesley Heidt, Bureau Chief, and Kellie A. Nielan, Assistant Attorney General, Daytona Beach, Florida,

for Respondent