# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Nos. 1D13-1754
1D13-1810
(Consolidated)

_____

KADEEM QUAISHAWN HART,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Duval County.
Charles W. Arnold, Judge.

June 4, 2018

ON REMAND FROM THE SUPREME COURT OF FLORIDA

ROWE, J.

The Florida Supreme Court quashed our opinion affirming Kadeem Hart's judgments and sentences and remanded this case "in light of [its] decision in *Kelsey [v. State*, 206 So. 3d 5 (Fla. 2016)]." *Hart v. State*, 2017 WL 836804 (Fla. Mar. 3, 2017). We must thus consider whether Hart is entitled to resentencing. Unlike other cases remanded in light of *Kelsey*, the supreme court's remand in this case did not provide specific instructions for resentencing. *See Smith v. State*, 2016 WL 7217234 (Fla. Dec. 13, 2016) (remanding "for resentencing" pursuant to *Kelsey*); *Galan v.*

*State*, 2016 WL 7212331 (Fla. Dec. 13, 2016) (remanding "for resentencing" in light of *Kelsey*).

For this reason, we directed the parties to show cause whether Hart was entitled to relief under *Kelsey*. The State responded that Hart is not within the class of juvenile nonhomicide offenders entitled to relief under *Kelsey* because his original life sentence was not reversed pursuant to *Graham v. State*, 560 U.S. 48 (2010), and his fifty-year aggregate sentence imposed after he was granted a new trial does not violate *Graham*. Hart replied that requiring him to serve his aggregate fifty-year sentence without judicial review after twenty years would violate the Eighth Amendment. For the reasons that follow, we affirm.

## I.

Hart was charged with carjacking, kidnapping, aggravated battery with a deadly weapon, armed robbery, and two counts of sexual battery. He was fifteen years old when he committed the offenses.

The testimony at trial established that Hart's first victim was walking home around 5:00 p.m. on January 5, 2007, when Hart approached her from behind, grabbed her arm, and put what she assumed to be a gun to her back. He took the victim to a wooded area, where he ordered her to remove her clothes. Over the course of the next forty-five minutes, Hart repeatedly hit the victim with his gun and raped her vaginally, orally, and anally. After he finished, Hart kept the victim's shirt, bra, and cell phone as "souvenirs" before running off. During the incident, Hart struck the victim so hard on her head with his gun that she lost consciousness. When the victim finally received medical attention, she required multiple stitches for a wound on her forehead and was required to wear a neck brace.

A few hours after he raped the first victim, Hart and his cousin approached a second victim who had arrived at her father's home around 10:20 p.m. Because her father's home had a long driveway inside a closed gate, the victim had to exit her car to open the gate. The end of the driveway was well lit by a street light. When she exited her vehicle, Hart and his cousin were standing nearby,

holding guns. The men pointed their guns at her and demanded her car, her keys, her cell phone, and her purse. The victim gave Hart and his cousin what they wanted and they drove off. The carjacking occurred approximately one block from where the first victim was raped.

The jury convicted Hart of sexual battery, battery as a lesser-included offense of sexual battery, kidnapping, aggravated battery with a deadly weapon, armed robbery, and carjacking. The trial court sentenced Hart to concurrent terms of life in prison on the sexual battery, armed robbery, and carjacking convictions; one year on the battery conviction; thirty years on the kidnapping conviction; and fifteen years on the aggravated battery conviction. Hart appealed, arguing that the charges involving the two victims were improperly joined and should have been separately tried. This Court agreed, reversed Hart's convictions, and ordered separate trials on remand. *Hart v. State*, 70 So. 3d 615, 620 (Fla. 1st DCA 2011) (*Hart I*).

On remand, Hart entered a plea to sexual battery, kidnapping, and the lesser-included offense of unarmed carjacking. The trial court sentenced Hart to concurrent thirty-year sentences for sexual battery and kidnapping and to a consecutive sentence of twenty years' imprisonment for carjacking, for an aggregate term of fifty years in prison. We affirmed Hart's convictions and sentences on direct appeal with a citation to our opinion in *Kelsey v. State*, 183 So. 3d 439 (Fla. 1st DCA 2015) (*Kelsey I*). *See Hart v. State*, 184 So. 3d 664, 664 (Fla. 1st DCA 2016) (*Hart II*). Hart then petitioned for review in the Florida Supreme Court. His petition was granted and this Court's decision was quashed and remanded in light of the decisions in *Henry v. State*, 175 So. 3d 675 (Fla. 2015), and *Gridine v. State*, 175 So. 3d 672 (Fla. 2015). *See Hart v. State*, 2016 WL 237904 (Fla. Jan. 20, 2016) (*Hart III*). The supreme court stayed the proceedings in this Court while it considered the disposition of our decision in *Kelsey I*. After it quashed our decision in *Kelsey I*, the supreme court quashed the decision in Hart's case and remanded the case in light of their decision in *Kelsey v. State*, 206 So. 3d 5 (Fla. 2016) (*Kelsey II*). *See Hart v. State*, 2017 WL 836804 (Fla. Mar. 3, 2017) (*Hart IV*).

3

*II.*

In *Graham*, the United States Supreme Court held that a juvenile offender who did not commit a homicide offense could not be sentenced to life without parole. 560 U.S. at 82. The Supreme Court did not require that a juvenile nonhomicide offender be guaranteed eventual release. *Id.* at 75. Rather, the Court held that if a life sentence was imposed on an offender who committed a nonhomicide offense as a juvenile, the offender must be provided a meaningful opportunity for release based on demonstrated maturity and rehabilitation. *Id.* Two years later, in *Miller v. Alabama*, 567 U.S. 460, 465 (2012), the Supreme Court held that juvenile offenders convicted of homicide offenses could not be sentenced to mandatory terms of life in prison without the possibility of parole.

In 2014, the Florida Legislature enacted chapter 2014-220, Laws of Florida, codified in sections 775.082, 921.1401, and 921.1402 of the Florida Statutes, with an effective date of July 1, 2014 ("new juvenile sentencing laws"). These changes to the sentencing laws were designed to provide a remedy for those offenders whose sentences were unconstitutional pursuant to *Miller* and *Graham*. The new laws were not designed as a mechanism for all offenders convicted of crimes they committed as juveniles to obtain judicial review of their sentences.

After the Legislature enacted the new juvenile sentencing laws, the Florida Supreme Court held that the new laws applied retroactively to offenses committed before the effective date of the new laws. In *Horsley v. State*, 160 So. 3d 393, 394 (Fla. 2015), the Florida Supreme Court was called upon to decide the proper remedy for a *Miller* violation. The supreme court determined that the new juvenile sentencing laws provided a remedy "to all juvenile offenders whose sentences [were] unconstitutional under *Miller*." *Id*. at 409. *Horsley*'s retroactive application of the new juvenile sentencing laws brought Florida's juvenile sentencing scheme into compliance with *Miller* and provided a remedy for all juvenile offenders with *unconstitutional* sentences, even if the offense was committed prior to the July 1, 2014, effective date. *See Falcon v. State*, 162 So. 3d 954, 963 (Fla. 2015), *receded from on other*

4

*grounds by Williams v. State*, 2018 WL 1007810 (Fla. Feb. 22, 2018).

The Florida Supreme Court expanded the class of juvenile nonhomicide offenders entitled to relief under *Graham* in *Henry v. State*, 175 So. 3d 675, 676 (Fla. 2015). *But see McCullough v. State*, 168 A. 3d 1045 (Md. Ct. Spec. App. 2017) (declining to extend the holding in *Graham* to apply to lengthy consecutive sentences).[1] There, the unanimous supreme court held that *Graham*'s prohibition against life without parole sentences for juvenile nonhomicide offenders was not limited to offenders sentenced to life imprisonment. *Id.* at 679-80. Instead, the supreme court held that *Graham* also prohibited sentences that were the functional equivalent of life sentences. *Id.* at 680. Henry had originally been sentenced to life imprisonment for multiple nonhomicide offenses. *Id.* at 676. Following *Graham* but before the Florida Legislature enacted the new juvenile sentencing laws, Henry was resentenced to an aggregate ninety-year prison term. *Id.* The supreme court held that Henry's ninety-year sentence amounted to a de facto life sentence and did not afford Henry a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" within his natural life. *Id.* at 679. The supreme court ordered Henry to be resentenced "in light of the new juvenile sentencing legislation enacted by the Florida Legislature in 2014, ch.2014–220, Laws of Fla." *Id.* at 680.

The Florida Supreme Court further expanded the class of juvenile nonhomicide offenders entitled to relief under *Graham* and resentencing under the new juvenile sentencing laws by

---

[1] In *McCullough*, the Maryland Court of Special Appeals surveyed cases throughout the United States to determine how state courts had applied the holding in *Graham*. Five states declined to apply *Graham* to "multiple term-of-years sentences for multiple offenses that, cumulatively, exceed a juvenile offender's natural life expectancy." *Id.* at 717. The court also found that at least five states, including Florida, had applied *Graham* to "aggregate term-of-years sentences imposed on juvenile offenders for multiple nonhomicide crimes when the sentences are the functional equivalent of [life without parole]." *Id.* at 724.

5

extending its holding in *Henry* to include lengthy term-of-years sentences. *Kelsey II*, 206 So. 3d at 5. However, the supreme court did not hold that *all* offenders convicted of nonhomicide crimes committed as juveniles were entitled to resentencing under *Graham* and the new juvenile sentencing laws. In *Kelsey II*, the supreme court rephrased the question certified to it as follows:

> Is a defendant whose original sentence violated *Graham v. Florida*, 560 U.S. 48 [130 S.Ct. 2011, 176 L.Ed.2d 825] (2010), and who was subsequently resentenced prior to July 1, 2014, entitled to be resentenced pursuant to the provisions of chapter 2014–220, Laws of Florida?

*Id.* at 6. Answering the question in the affirmative, the supreme court emphasized that its holding was limited to "a narrow class of juvenile offenders, *those resentenced from life to term-of-years sentences after Graham, for crimes committed before chapter 2014-220's July 1, 2014, effective date.*" *Id.* at 10. (emphasis added).

Kelsey fit squarely within the class of offenders the supreme court held was entitled to relief. Kelsey was sentenced in 2010, to two life sentences and two concurrent twenty-five-year sentences for four nonhomicide offenses he committed when he was fifteen years old. *Id.* at 6. In January 2014, after *Graham* but before the new juvenile sentencing laws were enacted, Kelsey was resentenced to concurrent sentences of forty-five years imprisonment. *Id.* at 7. A majority of the supreme court concluded that Kelsey's forty-five-year sentence violated the Eighth Amendment's prohibition against cruel and unusual punishment because it did not provide "the judicial review granted to other defendants who, like him, were sentenced to terms that [would] not provide them a meaningful opportunity for relief in their respective lifetimes." *Id.* at 10. However, Justice Polston, joined by Justices Lewis and Canady, dissented, concluding that Kelsey was not entitled to resentencing because his forty-five-year sentence was not a de facto life sentence and he would have a meaningful opportunity for release during his lifetime. *Id.* at 14.

Next, in *Johnson v. State*, 215 So. 3d 1237 (Fla. 2017), the supreme court again considered the constitutionality of a lengthy term-of-years sentence imposed on a juvenile nonhomicide

offender. The supreme court again narrowly defined the class of offenders entitled to relief under *Graham* and its prior decisions, stating that its holding in *Kelsey II* applied to "juveniles whose life sentences had been vacated pursuant to *Graham*, but who had not been resentenced under the new juvenile sentencing guidelines." *Id.* at 1239. And like Kelsey, Johnson fit squarely within the defined class of offenders the supreme court held was entitled to relief. Johnson had originally been sentenced to six concurrent life sentences for his convictions of armed burglary, armed kidnapping, attempted first-degree murder, and sexual battery using force or a weapon. *Id.* Johnson was resentenced pursuant to *Graham*, but before the new juvenile sentencing laws were enacted, and he was resentenced to 100 years in prison. *Id.* The supreme court held that Johnson was entitled to resentencing under the new juvenile sentencing laws, concluding that a sentence for a juvenile nonhomicide offender (1) must not provide for release only at the end of the sentence; (2) must include opportunity for release through a judicial review mechanism that considers the offender's demonstration of rehabilitation and maturity; and (3) must not provide for early release at a time beyond the offender's natural life. *Id.* at 1243.

In its next juvenile sentencing decision, the supreme court concluded that an offender originally sentenced to life imprisonment and then resentenced to a forty-five-year prison term was entitled to resentencing under *Graham* and the new sentencing laws. *Lee v. State*, 234 So. 3d 562 (Fla. 2018). A majority of the supreme court held that Lee was entitled to resentencing because his "sentence [did] not provide him an opportunity to obtain early release based on a demonstration of maturity and rehabilitation before the expiration of the imposed term." *Id.* at 564.

But again, the supreme court emphasized that Lee fit squarely within the narrow class of juvenile nonhomicide offenders entitled to relief under *Graham*:

> Lee, as was Kelsey, is serving a 40-year sentence for a nonhomicide crime that he committed when he was a juvenile. Like Kelsey, Lee was resentenced after the United States Supreme Court's decision in *Graham* but

7

before the Florida Legislature passed chapter 2014–220. And, like Kelsey—and as noted in *Johnson*—Lee's sentence does not provide him an opportunity to obtain early release based on a demonstration of maturity and rehabilitation before the expiration of the imposed term. Accordingly, Lee is entitled to resentencing under the juvenile sentencing provisions in chapter 2014–220.

*Id.* at 564; *but see id.* at 564-65. (Polston, J, dissenting) (arguing that Lee's forty-year sentence was not a life sentence nor a de facto life sentence; thus, it did not violate *Graham*, and he was not entitled to resentencing). In discussing its decision in *Kelsey II*, a majority of the supreme court explained that Kelsey was entitled to resentencing for two reasons: (1) his life sentence had been vacated pursuant to *Graham* and (2) he was not resentenced pursuant to the new juvenile sentencing laws. *Id.* at 564.

The supreme court's most recent opinion addressing sentencing for juvenile nonhomicide offenders is *Morris v. State*, 2018 WL 2146786 (Fla. May 10, 2018). Morris was sentenced to thirty years' imprisonment for attempted felony murder and to fifteen years' imprisonment for attempted armed robbery. *Id.* at 1. Thus, Morris was not within the class of juvenile nonhomicide offenders entitled to resentencing under *Henry*, *Kelsey II*, *Johnson*, and *Lee*. However, the supreme court held that Morris was entitled to be resentenced under the new juvenile sentencing laws. *Id.* at 3. Three justices joined in the opinion ordering resentencing, with one justice concurring only in result. *Id.* at 3. The remaining justices joined in a dissent authored by Justice Lawson, concluding that Morris was not entitled to resentencing pursuant to *Graham* because he did not receive a sentence of life imprisonment or the functional equivalent of life. *Id.* at 4.

## III.

The State argues that Hart is not entitled to resentencing because the narrow class of offenders entitled to relief under *Henry*, *Kelsey II*, *Johnson*, and *Lee* is limited to those defendants whose life sentences were vacated pursuant to *Graham* and who were resentenced before July 1, 2014. Nor is he entitled to resentencing under *Graham*. We agree.

8

In *Henry*, *Kelsey II*, *Johnson*, and *Lee*, the Florida Supreme Court very narrowly defined the class of offenders entitled to resentencing under the new juvenile resentencing laws; specifically, those defendants who originally received life sentences and who were resentenced after their sentences were vacated pursuant to *Graham* but before the July 1, 2014 effective date of the new juvenile sentencing laws.[2]  The defendants in *Henry*, *Kelsey II*, *Johnson*, and *Lee* fell squarely within the class definition.  Hart does not.  Although Hart was sentenced to life imprisonment in 2009, Hart's convictions and life sentences were vacated on grounds that the joinder of his trials involving the two victims was improper, and he was granted a new trial.  *Hart I*, 70 So. 3d at 620.  On remand in 2013, Hart entered a negotiated plea and agreed to be sentenced to an aggregate term of fifty years' imprisonment.  Thus, for purposes of our analysis, we look to the sentence imposed for his 2013 convictions, not the life sentences imposed for his vacated 2009 convictions.  Applying the definition of the class of offenders entitled to relief under *Henry*, *Kelsey II*, *Johnson*, and *Lee*, we conclude Hart is not entitled to relief because he was never resentenced pursuant to *Graham*.

Nor can Hart demonstrate that his fifty-year aggregate sentence violates *Graham*.  In order to qualify for resentencing under the new juvenile sentencing laws, Hart was required to demonstrate that his fifty-year aggregate sentence violates the

---

[2] Although the supreme court in *Morris* granted relief to a defendant outside the class of offenders it had defined in *Henry*, *Kelsey II*, *Johnson*, and *Lee*, the decision in *Morris* does not control the outcome in this case because only three justices concurred in the opinion.  "Under the Florida Constitution, both a binding decision and a binding precedential opinion are created to the extent that at least four members of the Court have joined in an opinion and decision."  *Lee v. State*, 854 So. 2d 709, 716 (Fla. 2d DCA 2003) (quoting *Santos v. State*, 629 So. 2d 838, 840 (Fla. 1994)).  Thus, we are compelled to follow the supreme court's precedents in *Henry*, *Kelsey II*, *Johnson*, and *Lee*.  *See Caruthers v. State*, 232 So. 3d 441 (Fla. 4th DCA 2017).

Eighth Amendment and *Graham*. *See Henry*, 175 So. 3d at 679. He cannot do so. Hart was not sentenced to a life sentence or a de facto life sentence. Consistent with the requirements of *Graham*, Hart's fifty-year sentence affords him a meaningful opportunity for release during his natural life. *See Davis v. State*, 214 So. 3d 799, 799-800 (Fla. 1st DCA 2017) (holding that defendant's thirty-five-year aggregate sentence did not violate *Graham* or require resentencing under the new juvenile sentencing laws); *Katwaroo v. State*, 237 So. 3d 446 (Fla. 5th DCA 2018) (Berger, J., concurring) (concurring in light of binding precedent, but observing that Katwaroo's thirty-year sentence did not violate *Graham*).

Nonetheless, Hart argues that denying him relief would be inconsistent with the supreme court's decision granting relief to the defendant in *Smith v. State*, 2016 WL 7217234 (Fla. Dec. 13, 2016), *quashing Smith v. State*, 119 So. 3d 530 (Fla. 5th DCA 2013). In *Smith*, a decision rendered after the remand in Hart's case, the supreme court quashed a Fifth District decision that affirmed a forty-year sentence imposed on a juvenile nonhomicide offender who had not previously been sentenced to life imprisonment. In rejecting Hart's arguments, we make two observations. First, the supreme court's remand in *Smith* explicitly required that Smith's case be further remanded for resentencing and cited several of the supreme court's prior decisions:

> [T]he Fifth District Court of Appeal's decision in this case is quashed, and this matter is remanded for resentencing in light of the decisions *Kelsey v. State*, 2016 WL 7159099 (Fla. Dec. 8, 2016); *Henry v. State*, 175 So. 3d 675 (Fla. 2015); and *Gridine v. State*, 175 So. 3d 672 (Fla. 2015).

*Smith*, 2016 WL 7217234 (Fla. Dec. 13, 2016).

In its remand of Hart's case to this Court, the supreme court did not expressly require resentencing and cited only *Kelsey II* in its decision. *Hart IV*, 2017 WL 836804 (Fla. Mar. 3, 2017) ("[T]he First District Court of Appeal's decision in this case is quashed, and that this matter is remanded in light of our decision in *Kelsey*."). Had the supreme court intended for this Court to further

10

remand Hart's case for resentencing, it could have so ordered in its remand instructions. *See Smith v. State*, 2017 WL 2709772 (Fla. June 23, 2017) ("[T]his matter is remanded to the district court with instructions that the case be further remanded for resentencing.").

Second, Hart suggests that the supreme court's decisions in *Henry* and *Kelsey II* require that juvenile nonhomicide offenders serving a sentence longer than twenty years be resentenced and afforded the judicial review mechanism provided in the new juvenile sentencing laws. We reject this interpretation of *Henry* and *Kelsey II*. *See Montgomery v. State*, 230 So. 3d 1256, 1265 (Fla. 5th DCA 2017) (Eisnaugle, J., concurring in result only) ("*Kelsey* did not hold that all juvenile sentences longer than twenty years are unconstitutional unless they include chapter 2014-220's review mechanism"). A majority of the supreme court has never held that sentences for juvenile nonhomicide offenders that exceed twenty years violate *Graham* and that such offenders are entitled to resentencing under the new juvenile sentencing laws. *See Abrakata v. State*, 2017 WL 24657 (Fla. Jan. 3, 2017) (denying review of Abrakata's twenty-five-year sentence for attempted second-degree murder). Nor has a majority of the supreme court so vastly expanded the class of offenders entitled to resentencing under *Graham* and the new juvenile sentencing laws. Accordingly, we decline Hart's invitation to further expand the class of juvenile nonhomicide offenders entitled to resentencing under *Graham*. Taken to its logical conclusion, Hart's construction of the supreme court's decisions in *Henry* and *Kelsey II* would entitle every juvenile nonhomicide offender serving a sentence exceeding twenty years to resentencing on grounds that those sentences violate the Eighth Amendment prohibition against cruel and unusual punishment. *Graham* does not compel such a result, nor does any binding decision from the supreme court.

Because Hart's aggregate fifty-year sentence does not violate *Kelsey*, *Graham*, or the Eighth Amendment's prohibition against cruel and unusual punishment, we affirm.

AFFIRMED.

ROBERTS and KELSEY, JJ., concur.

11

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____


Andy Thomas, Public Defender, and Glen P. Gifford, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Jennifer J. Moore, Assistant Attorney General, Tallahassee, for Appellee.