# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-5248
_____

TRAVIS D. MARSHALL,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Leon County.
Martin A. Fitzpatrick, Judge.

August 23, 2019

PER CURIAM.

Appellant, Travis D. Marshall, challenges his convictions and sentences for burglary of a dwelling, grand theft, and petit theft, offenses he committed at the age of twenty-one. We affirm as to both issues Appellant raises on appeal and write only to address his argument that the minimum mandatory fifteen-year prison sentence he received on the burglary count as a prison releasee reoffender ("PRR") is unconstitutional pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012), and *Graham v. Florida*, 560 U.S. 48 (2010), for the reason that he qualified for it only because of prior crimes he committed when he was a juvenile.

The constitutionality of a sentence is reviewed *de novo*. *Nelms v. State*, 263 So. 3d 88, 90 (Fla. 4th DCA 2019); *see also Andrews*

*v. State*, 82 So. 3d 979, 984 (Fla. 1st DCA 2011) (explaining that constitutional issues are reviewed *de novo* and "when considering Eighth Amendment issues, appellate courts must yield 'substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishment for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals'" (quoting *Solem v. Helm*, 463 U.S. 277, 290 (1983)).

"Prison releasee reoffender" means a defendant who commits or attempts to commit an enumerated offense, such as burglary, within three years after being released from a correctional facility following incarceration for an offense for which the sentence is punishable by more than one year. § 775.082(9)(a), Fla. Stat. (2017). If the State seeks PRR sentencing and proves that the defendant is a PRR, the court must sentence the defendant to at least fifteen years of imprisonment for a second-degree felony. *Id.* A person sentenced as a PRR may be released only upon expiration of the sentence, shall not be eligible for parole or any form of early release, and must serve 100% of the court-imposed sentence. § 775.082(9)(b), Fla. Stat. As such, "[t]he PRR statute is a mandatory minimum provision that creates a sentencing floor." *Cotto v. State*, 139 So. 3d 283, 286 (Fla. 2014).

In *Graham*, the Supreme Court held that the imposition of a life without parole sentence on a juvenile offender who did not commit a homicide constitutes cruel and unusual punishment. 560 U.S. at 74. Juvenile nonhomicide offenders' limited culpability, the severity of the sentence of life without parole, and the lack of penological justification for the punishment for such offenders led the Court to conclude that the sentencing practice was cruel and unusual. *Id.* (explaining that a state need not guarantee a juvenile nonhomicide offender's eventual release, but it must afford some realistic opportunity to obtain release before the end of the life term based on demonstrated maturity and rehabilitation). The Court drew the "clear line" at the age of eighteen for the purposes of its holding. *Id.* at 74-75 (citing *Roper v. Simmons*, 543 U.S. 551 (2005), where the Supreme Court held that the Eighth and Fourteenth Amendments prohibit the imposition of the death penalty on juvenile offenders and recognized that "[t]he qualities that distinguish juveniles from adults do not disappear when an

individual turns 18," but concluded that the line must be drawn at the age of 18 because that is "the point where society draws the line for many purposes between childhood and adulthood").

Subsequently, in *Miller*, the Supreme Court held that a mandatory life without parole sentence for a juvenile offender violates the Eighth Amendment's prohibition on cruel and unusual punishment because it prevents consideration of juveniles' lessened culpability and greater capacity for change. 567 U.S. at 465, 479. The Court focused on the fact that "*Roper* and *Graham* establish that children are constitutionally different from adults for purposes of sentencing" and on the reasons why "juveniles have diminished culpability and greater prospects for reform." *Id.* at 471. The Court again defined juvenile offenders as those under the age of eighteen at the time of their crimes. *Id.* at 465, 470-71, 473, 489.

In response to *Graham* and *Miller*, the Florida Legislature in 2014 enacted juvenile sentencing laws. The juvenile sentencing laws are codified in sections 775.082, 921.1401, 921.1402, Florida Statutes, and apply to defendants who are convicted of certain offenses they committed when they were under the age of eighteen and who are sentenced to a term of life imprisonment or its equivalent.

Here, Appellant argues that his mandatory day-for-day PRR sentence is unconstitutional pursuant to *Graham* and *Miller* and he should be resentenced under the juvenile sentencing statutes. We find Appellant's argument to be without merit for a number of reasons. First, Appellant was sentenced as a PRR for an offense he committed as an adult; therefore, *Graham*, *Miller*, and the juvenile sentencing statutes are inapplicable. Appellant tries to avoid this conclusion by contending that while the mandatory sentence was not imposed for an offense he committed as a juvenile, it was imposed because of offenses he committed as a juvenile. While that is true to the extent that he could not have received the PRR sentence absent the prior offenses he committed as a juvenile, it overlooks the fact that he is not challenging the sentences for the offenses he committed as a juvenile and he could not have received the PRR sentence had he not committed the new offenses as an adult.

3

Indeed, Appellant's argument ignores and defeats the purpose of the PRR statute, which is to punish certain reoffenders to the fullest extent and thereby deter recidivism. *See* § 775.082(9)(d)1., Fla. Stat. ("It is the intent of the Legislature that offenders previously released from prison who meet the criteria in paragraph (a) be punished to the fullest extent of the law . . . ."); *State v. Hearns*, 961 So. 2d 211, 217 (Fla. 2007) ("The PRR statute . . . is intended to deter recidivism by imposing longer sentences on repeat offenders."); *Mobley v. State*, 983 So. 2d 630, 632 (Fla. 5th DCA 2008) (explaining that the legislative intent behind the PRR statute is to punish certain reoffenders to the fullest extent of the law).

Regardless, courts have consistently declined to extend the holdings of *Graham* and *Miller* and the applicability of the juvenile sentencing statutes to offenders eighteen years of age or older. *See Romero v. State*, 105 So. 3d 550, 551-53 (Fla. 1st DCA 2012) (rejecting the eighteen-year-old offender's argument that his sentence of life without parole for murder was unconstitutional pursuant to *Graham* because of his youth and the attendant factors; holding that for *Graham* to apply, the offender must have been a juvenile at the time of the commission of the offense; and noting that "[n]ot a single court in this country has extended *Graham* to an adult offender. On the contrary, several courts have reaffirmed that *Graham* is inapplicable to adult offenders."); *see also McCray v. State*, 247 So. 3d 721, 722 (Fla. 1st DCA 2018) (per curiam affirming with a citation to *Romero* as holding that *Graham* does not apply to a defendant eighteen years of age or older); *Wilson v. State*, 249 So. 3d 800 (Fla. 1st DCA 2018) (same); *Jean-Michel v. State*, 96 So. 3d 1043, 1045 (Fla. 4th DCA 2012) (rejecting the appellant's argument that his three consecutive life sentences for nonhomicide crimes were unconstitutional pursuant to *Graham* because he was nineteen years old at the time of the offenses and emphasizing that in both *Roper* and *Graham*, the Supreme Court expressly drew the line at the age of eighteen). As we have stated, "[w]e apply *Graham* as written. We decline to take the extreme act of extending *Graham* to adult offenders in the absence of a clear and explicit directive from the Supreme Court." *Romero*, 105 So. 3d at 554.

4

Second, even if *Graham* and *Miller* could be extended to an adult offender, they would be inapplicable because Appellant was not sentenced to life imprisonment or its equivalent. *See Romero*, 105 So. 3d at 553 (explaining that for *Graham* to apply, the offender must have been sentenced to life and the sentence must not provide him with any possibility of release during his lifetime); *see also McCrae v. State*, 267 So. 3d 470, 471 (Fla. 1st DCA 2019) (finding that the appellant's thirty-year prison sentence was not inconsistent with *Graham* or *Miller* because "there was no life sentence—de facto or otherwise. Indeed, McCrae will still be in his forties when released."); *Hart v. State*, 255 So. 3d 921, 927-28 (Fla. 1st DCA 2018) (finding that the appellant could not demonstrate that his aggregate fifty-year prison sentence violated *Graham* because "[he] was not sentenced to a life sentence or a de facto life sentence. Consistent with the requirements of *Graham*, [his] fifty-year sentence affords him a meaningful opportunity for release during his natural life."); *Davis v. State*, 214 So. 3d 799, 799 (Fla. 1st DCA 2017) (concluding that the appellant's aggregate thirty-five-year prison sentence did not violate *Graham* or *Miller* because he "was not sentenced to a life, mandatory life, or a de facto life sentence"). Appellant's fifteen-year sentence is considerably shorter than sentences we have found not to constitute life sentences.

Lastly, Appellant contends that the juvenile sentencing laws should be applied to his situation. However, those statutes do not apply to the circumstances this case presents because there is not an original sentence that violates *Graham* or *Miller*. *See Hart*, 255 So. 3d at 924-27 ("[T]he Florida Supreme Court very narrowly defined the class of offenders entitled to resentencing under the new juvenile resentencing laws; specifically, those defendants who originally received life sentences and who were resentenced after their sentences were vacated pursuant to *Graham* but before the July 1, 2014 effective date of the new juvenile sentencing laws." ); *see also McCrae*, 267 So. 3d at 471-72 (explaining that "[w]ithout an unconstitutional sentence to start with, McCrae is not entitled to resentencing under the new statute" and "[u]nless and until the Florida Supreme Court announces that every juvenile defendant is entitled to a sentence under the new laws—regardless of when the defendant was sentenced or whether the original sentence violated *Graham* or *Miller*—we will follow the rule that

5

resentencing only applies when there was a *Graham* or *Miller* violation").

For the foregoing reasons, we conclude that Appellant's PRR sentence does not violate *Graham*, *Miller*, or the Eighth Amendment's prohibition against cruel and unusual punishment. Accordingly, we affirm Appellant's convictions and sentences.

AFFIRMED.

LEWIS, OSTERHAUS, and M.K. THOMAS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____


Andy Thomas, Public Defender, and Kathleen Stover, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Tabitha Herrera, Assistant Attorney General, Tallahassee, for Appellee.