PERRY, J.
This case is before the Court for review of the decision of the First District Court of Appeal in Kelsey v. State, 183 So.3d 439 (Fla. 1st DCA 2015). In its decision, the district court expressed concern and certified a question of great public importance,[1] which we rephrase as follows:
Is a defendant whose original sentence violated Graham v. Florida, 560 U.S. 48 [130 S.Ct. 2011,176 L.Ed.2d 825] (2010), and who was subsequently resentenced prior to July 1, 2014, entitled to be resentenced pursuant to the provisions of chapter 2014-220, Laws of Florida?
We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We answer the rephrased question in the affirmative.
FACTS AND PROCEDURAL HISTORY
Thomas Kelsey was born on December 10, 1986. The underlying offenses in this case occurred on November 6, 2002, when fifteen-year-old Kelsey burglarized an apartment and raped the pregnant victim at knifepoint in the presence of her two small children. Kelsey was identified in 2008 based on a DNA match. In 2009, Kelsey was charged with two counts of armed sexual battery, armed burglary, and armed robbery, and he pleaded guilty. On March 26, 2010, a trial court sentenced Kelsey to two life sentences and two concurrent twenty-five-year terms for four nonhomicide offenses. After the United States Supreme Court decided Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 *7 L.Ed.2d 825 (2010), Kelsey sought to withdraw his plea, which was denied. At the resentencing held in January 2014, the trial court imposed concurrent sentences of forty-five years.[2]
On appeal, the First District Court of Appeal originally issued an opinion in Kelsey v. State, 183 So.3d 439, 440 (Fla. 1st DCA 2015), comprised of one paragraph, holding:
Even if Mr. Kelsey were entitled to resentencing under Henry [v. State, 175 So,3d 675 (Fla. 2015) ], which applied the new sentence review statute to a Graham-eligible defendant, he is not entitled to the benefit of the new sentence review statute because his previous convictions for another separate armed robbery and conspiracy to -commit armed robbery disentitle him to relief. See § 921.1402(2)(a), Fla. Stat. (2014) (“[A] juvenile offender is not entitled to review if he or she has previously been convicted of one of the following offenses, or conspiracy to commit one of the- following offenses ... armed robbery.”).
On Kelsey’s motion for rehearing, the First District issued a revised opinion, reconsidering its legal analysis, and “concluding that [Kelsey] is not entitled to resentencing again.” Id. Under its revised analysis, the First District opined that it was precluded from providing Kelsey the same relief afforded to Henry because Kelsey’s forty-five-year prison term did not constitute a de facto life sentence in violation of Graham. Id. at 441 (citing Abrakata v. State, 168 So.3d 251, 252 (Fla. 1st DCA 2015); Lambert v. State, 170 So.3d 74, 76 (Fla. 1st DCA 2015)). Specifically, the First District stated, “Because the concurrent resentences at issue in this case do not violate Graham, we are constrained to deny relief.” Id.
After recognizing our guidance in Thomas v. State, 135 So.3d 590 (Fla. 1st DCA 2014), quashed, 177 So.3d 1275 (Fla. 2015) (table decision), the First District distinguished Kelsey, opining that the decision in Thomas was based on Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012),[3] and its progeny, and not Graham. The First District recognized that, “the supreme court appears to require that any juvenile initially sentenced ¡.. in violation of Miller be sentenced under the new framework regardless of what resentence may have been imposed in the interim.” Kelsey, 183 So.3d at 441. However, the district court reasoned:
Unlike Miller cases for which no valid remedy on resentencing was available until the recent legislation, a wide range valid term of years sentences are available for [juveniles] whose original sentences were unconstitutional under Graham. If those resentences themselves violate Graham by providing no meaningful opportunity for release (as in Henry and Gridine [v. State, 175 So.3d 672 (Fla. 2015)]), the supreme court requires resort[ing] to the 2014 legislative remedies. But the supreme court has not yet held that all resentencings and re-resentencings under Graham must also comply with the recent legislation. Our precedents have not held that a forty-five year sentence for a nonhomicide is a facto life term to which Graham applies; nor has our supreme court. We are thereby constrained to affirm in this case, but recognizing the need for clarity *8 on this category of Graham cases certify the following question ....
Id. at 442.
DISCUSSION
Standard of Review
Because the certified question of great public importance before this Court presents a purely legal question, the appropriate standard of review is de novo. See Gridine, 175 So.3d at 674 (citing Haygood v. State, 109 So.3d 735, 739 (Fla. 2013)).
Graham
The United States Supreme Court’s decision in Graham held that Florida’s practice of sentencing juvenile offenders to life in prison for nonhomicide crimes violated the Eighth Amendment to the United States Constitution. For a period of nearly four years, the Florida Legislature left the trial courts and district courts of appeal to determine how to legally sentence juvenile nonhomicide offenders. In 2014, the Legislature passed chapter 2014-220, Laws of Florida, which provided judicial review for juvenile offenders who were tried as adults and received more than twenty years of incarceration, with exceptions. Following that, this Court, in a unanimous decision, decided that juveniles who receive sentences that do not provide a meaningful opportunity for release are entitled to be resentenced pursuant to chapter 2014-220, Laws of Florida. As we discuss further below, we conclude that our decision in Henry v. State, 175 So.3d 675 (Fla. 2015), requires that all juvenile offenders whose sentences meet the standard defined by the Legislature in chapter 2014-220, a sentence longer than twenty years, are entitled to judicial review. We therefore hold that all juveniles who have sentences that violate Graham are entitled to resentencing pursuant to chapter 2014-220, Laws of Florida, codified in sections 775.082, 921.1401 and 921.1402, Florida Statutes (2014).
To answer the First District’s certified question, we first revisit the Supreme Court’s decision in Graham. Terrance Jamar Graham received a withheld adjudication and was sentenced to probation for crimes he committed at the age of sixteen. He subsequently received a life sentence after violating that probation before he turned eighteen years of age. Graham, 560 U.S. at 53-57,130 S.Ct. 2011.
The Supreme Court began its analysis with its Eighth Amendment jurisprudence. Id. at 58, 130 S.Ct. 2011. The Court noted that the core of the Eighth Amendment “is the ‘precept of justice that punishment for crime should be graduated and proportioned to [the] offense.’” Id. at 59, 130 S.Ct. 2011 (quoting Weems v. United States, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910)). The Court then noted that Graham presented a new categorical challenge to term-of-years sentences. M. at 61, 130 S.Ct. 2011 (“The present case involves an issue the Court has not considered previously: a categorical challenge to a term-of-years sentence.”). Accordingly, the Court reasoned, the correct approach to the analysis would be the one used in cases such as Kennedy v. Louisiana, 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008), Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), and Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). Graham, 560 U.S. at 61-62, 130 S.Ct. 2011.
Opining that “Roper established that because juveniles have lessened culpability they are less deserving of the most severe punishments,” Graham, 560 U.S. at 68, 130 S.Ct. 2011 (citing Roper, 543 U.S. at 569, 125 S.Ct. 1183), the Court pronounced a categorical rule. Id. at 75, 78, 79, 130 S.Ct. 2011 (“Categorical rules tend to be imperfect, but one is necessary here.” “A cate *9 gorical rule avoids the risk that ... a court or jury will erroneously conclude that a particular juvenile is sufficiently culpable to deserve life without parole for a nonho-micide.” “[A] categorical rule gives all juvenile nonhomicide offenders a chance to demonstrate maturity and reform.”). The new categorical rule provided that:
The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term.
Id. at 82.
In this Court’s discussions of Graham, we have underscored the Supreme Court’s emphasis on the status of the juvenile non-homicide offender and the nature of the offense committed. See Henry, 175 So.3d at 675 (citing Graham, 560 U.S. at 69, 130 S.Ct. 2011). Accordingly, our focus has not been on the length of the sentence imposed but on the status of the offender and the possibility that he or she will be able to grow into a contributing member of society. To understand this reading of Graham, we now turn to our decision in Henry-
Henry
Leighdon Henry, a juvenile offender who was tried as an adult, was convicted of multiple nonhomicide crimes and sentenced to life in prison plus an additional sixty years. Henry, 175 So.3d at 676. After Graham issued, Henry’s life sentence was vacated and he was resentenced to thirty years in prison, to run consecutively to the originally imposed sixty-year sentence. Id.
On appeal, we concluded “that Graham prohibits the state trial courts from sentencing juvenile nonhomicide offenders to prison terms that ensure these offenders will be imprisoned without obtaining a meaningful opportunity to obtain future early release during their natural lives based on their demonstrated maturity and rehabilitation.” Id. at 680. We reasoned that the “Supreme Court’s long-held and consistent view that juveniles are different” supported the conclusion that “the specific sentence that a juvenile nonhomi-cide offender receives for committing a given offense is not dispositive as to whether the prohibition against cruel and unusual punishment is implicated.” Id. Thus, we determined that Graham was not limited to certain sentences but rather was intended to insure that “juvenile non-homicide offenders will not be sentenced to terms of imprisonment without affording them a meaningful opportunity for early release based on a demonstration of maturity and rehabilitation.” Id. In light of this reasoning, we concluded that the Eighth Amendment, as read through Graham, requires a review mechanism for evaluating this class of offenders because “any term of imprisonment for a juvenile is qualitatively different than a comparable period of incarceration is for an adult.” Id. Therefore, our holding in Henry was not predicated on the term of the sentence but rather on the status of, and the opportunity afforded, the offender. Indeed, the holding of Henry was unequivocal. Additionally, we determined that the remedy outlined in Horsley v. State, 160 So.3d 393, 395 (Fla. 2015), applied to cases like Henry’s. See Henry, 175 So.3d at 680.
Horsley
In Horsley, a juvenile offender tried as an adult was convicted of first-degree felony murder, among other offenses, and received a mandatory life sentence without the possibility of parole. After Miller, the trial court resentenced Horsley to life imprisonment without the possibility of parole. The Fifth District Court of Appeal *10 vacated that sentence and certified a question of great public importance to this Court,[4] In our decision, we reasoned that “presented with this unique situation in which a federal constitutional infirmity in a sentencing statute has now been specifically remedied by our Legislature, we conclude that the proper remedy is to apply [that legislation] to all juvenile offenders whose sentences are unconstitutional in light of Miller,” Horsley, 160 So.3d at 396.
Miller held that “the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders,” even for juveniles convicted of homicide crimes. Miller, 132 S.Ct. at 2469. While the remedy articulated in Horsley initially only applied to those juvenile defendants whose sentences violated the Eighth Amendment pursuant to Miller, we extended the reasoning of Horsley to those juveniles whose sentences violated the Eighth Amendment pursuant to Graham in Henry. See Henry, 175 So.3d at 680. We have since reaffirmed that application of the new statute is the appropriate remedy. See Thomas v. State, 177 So.3d 1276 (Fla. 2015).
Reading together our decisions in Henry, Horsley, and Thomas, it is clear that we intended for juvenile offenders, who are otherwise treated like adults for purposes of sentencing, to retain their status as juveniles in some sense. In other words, we have determined through our reading of the Legislature’s intent in passing chapter 2014-220, Laws of Florida, that juveniles who are serving lengthy sentences are entitled to periodic judicial review to determine whether they can demonstrate maturation and rehabilitation. It would be antithetical to the precept of Graham and chapter 2014-220, Laws of Florida, to interpret them so narrowly as to exclude a juvenile offender who happens to have been resentenced before this Court issued Henry. With these considerations in mind, we turn to the present case.
This Case
Kelsey represents a narrow class of juvenile offenders, those resentenced from life to term-of-years sentences after Graham, for crimes committed before chapter 2014-220’s July 1, 2014, effective date. Kelsey argues that his sentence does not currently provide the relief specified in our previous decisions and seeks the judicial review granted to other defendants who, like him, were sentenced to terms that will not provide them a meaningful opportunity for relief in their respective lifetimes. We agree.
After we made clear that Graham does indeed apply to term-of-years sentences, we have declined to require that such sentences must be “de facto life” sentences for Graham to apply. See, e.g., Guzman v. State, 183 So.3d, 1025, 1026 (Fla. 2016). By using chapter 2014-220 as a guide, we avoid second-guessing the legislative contemplation that resulted in the twenty-year cutoff for judicial review contained in the law. However, in applying chapter 2014-220, we agree with the State that the new sentencing scheme contemplates the possibility of a life sentence for a juvenile nonhomicide offender. See Horsley, 160 So.3d at 404 (“Juveniles convicted of non-homicide offenses, thereby implicating Graham rather than Miller, also may be *11 sentenced to life imprisonment if the trial court, after considering the specified factors during an individualized sentencing hearing, determines that a life sentence is appropriate.” (citing ch, 2014-220 §§ 1, 3, Laws of Fla.)). Because we determine that resentencing is the appropriate remedy, the trial courts may embrace all of the provisions of chapter 2014-220 and are not required to limit themselves to only applying the judicial review provision. This would mean that if the State seeks a life sentence, the trial court’s determination would have to be informed by individualized sentencing considerations.
Kelsey further argues that he has a reasonable expectation of finality in his forty-five-year prison term because his term is lawful apart from its failure to provide judicial review. We disagree.
In Ashley v. State, 850 So.2d 1265, 1267 (Fla. 2003), we held that “[o]nce a sentence has been imposed and the person begins to serve the sentence, that sentence may not be increased without running afoul of double jeopardy principles.” (citing Lippman v. State, 633 So.2d 1061 (Fla. 1994); Clark v. State, 579 So.2d 109 (Fla. 1991)). To do so, we articulated, was a clear violation of the Double Jeopardy Clause. Id. (citing State v. Wilson, 680 So.2d 411, 413 (Fla. 1996)). In 2012, we clarified that jeopardy attaches only to a legal sentence. Dunbar v. State, 89 So.3d 901, 905 (Fla. 2012) (citing Harris v. State, 645 So.2d 386, 388 (Fla. 1994)).
Therefore, jeopardy has not attached to Kelsey’s illegal sentence, and when he is resentenced according to the provisions of chapter 2014-220, the State may again seek life imprisonment with judicial review. Kelsey originally began serving his sentence as a life sentence, but that sentence became illegal when the Supreme Court issued Graham and Kelsey successfully sought relief. However, his sentence was unconstitutional not because of the length of his sentence, but because it did not provide him a meaningful opportunity for early release based on maturation and rehabilitation. Accordingly, Kelsey’s resen-tencing under the provisions of chapter 2014-220 would not place him in any worse position than he would have been had he initially faced post-Graham resentencing under the statute.
For these reasons, there is no , compelling reason that the State must be precluded from seeking a life sentence that complied with Graham:
A State is not required to guarantee eventual freedom to a juvenile offender . convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance.
Graham, 560 U.S. at 75, 130 S.Ct. 2011. In Henry, we determined that the Legislature’s remedy was the appropriate remedy in these cases, and the Legislature has determined that the “means and mechanisms for compliance” with Graham are to provide judicial review for juvenile offenders who are sentenced to terms longer than twenty years. Therefore Kelsey is entitled to resentencing under those provisions. We therefore answer the rephrased question in the affirmative and remand for further proceedings consistent with this opinion.
It is so ordered.
LABARGA, C.J., and PARIENTE, and QUINCE, JJ„ concur.
PARIENTE, J., concurs with an opinion, in which LABARGA, C.J., and PERRY, J., concur.
*12 POLSTON, J., dissents with an opinion, in which LEWIS and CANADY, JJ., concur.

. The following question was certified by the First District:
Whether a defendant whose initial sentence for a nonhomicide crime violates Graham v. Florida, and who is resentenced to concurrent forty-five year terms, is entitled to a new resentencing under the framework established in chapter 2014-220, Laws of Florida?
Kelsey, 183 So.3d at 442.

. The sentences also run concurrently to a twenty-year sentence that Kelsey is serving pursuant to a revocation of probation on an unrelated offense.

. In Miller, the Supreme Court held that mandatory life sentences without parole for crimes committed by juveniles violate the Eighth Amendment.

. The Fifth District asked: "Whether the Supreme Court’s decision in Miller v. Alabama [567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012)], which invalidated section 775.082(1)’s mandatory imposition of life without parole sentences for juveniles convicted of first-degree murder, operates to revive the prior sentence of life with parole eligibility after 25 years previously contained in that statute?” Horsley, 160 So.3d at 397 (quoting Horsley v. State, 121 So.3d 1130, 1132-33 (Fla. 5th DCA 2013)).