# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-2664

_____

TERRENCE JAMAR GRAHAM,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Duval County.
Angela M. Cox, Judge.

August 14, 2019

ROWE, J.

Terrence Jamar Graham appeals an order denying his postconviction motion challenging the sentence imposed during a 2017 resentencing hearing. Graham successfully appealed his original sentence of life without parole. *Graham v. Florida*, 560 U.S. 48, 74-75 (2010). He was resentenced in 2013 to a term of twenty-five years' imprisonment. After the Florida Legislature enacted new juvenile sentencing laws in 2014, Graham challenged his sentence again, arguing that he was entitled to a sentence review under the new laws. In 2017, the court reimposed the twenty-five-year term but granted Graham a sentence review after twenty years. Graham argues that his most recent sentence is illegal, asserting that the new juvenile sentencing laws violate equal protection because under the plain language of the laws, a

juvenile homicide offender may receive a sentence review sooner than a juvenile nonhomicide offender. We disagree and affirm.

*Factual and procedural background*[1]

In July 2003, when Graham was 16 years old, he and three other juveniles tried to rob a restaurant in Jacksonville, Florida. During the robbery, Graham's accomplice twice struck the restaurant manager in the back of the head with a metal bar. Graham and his accomplice then ran outside without taking any money and escaped in a car driven by the third accomplice. The restaurant manager required stitches for his head injury.

Graham was arrested and tried as an adult. He was charged with armed burglary with assault or battery, a first-degree felony carrying a maximum penalty of life imprisonment without the possibility of parole, §§ 810.02(1)(b), (2)(a), Florida Statutes (2003), and attempted armed robbery, a second-degree felony carrying a maximum penalty of fifteen years' imprisonment, §§ 812.13(2)(b), 777.04(1), (4)(a), 775.082(3)(c), Florida Statutes.

Graham pleaded guilty to both charges. The trial court withheld adjudication of guilt and sentenced Graham to concurrent three-year terms of probation with the condition that he serve the first twelve months in county jail. Graham served the twelve-month sentence and was released from jail in June 2004.

Less than six months later and thirty-four days short of his eighteenth birthday, Graham was arrested again, this time for committing an armed home invasion and fleeing. At the revocation hearing, the State presented evidence that Graham held the victim at gunpoint while his codefendants robbed the home and then locked the victim in a closet. The State also presented evidence that Graham confessed to police that he was involved in "two or three" other robberies the night before. Graham denied at the hearing any involvement in the home invasion robbery but

[1] Because of the limited record, the facts related to the original charges are largely drawn from *Graham v. State*, 982 So. 2d 43 (Fla. 1st DCA 2008), and *Graham v. Florida*, 560 U.S. 48 (2010).

admitted to violating probation by fleeing. The trial court then revoked Graham's probation. Graham was sentenced to life imprisonment for the original offenses of armed burglary with assault and attempted armed robbery.

Graham appealed his sentence, and his case made its way to the United States Supreme Court. In 2010, the Supreme Court reversed Graham's life sentence, holding that the Florida laws allowing juvenile nonhomicide offenders to be sentenced to life without parole violate the Eighth Amendment to the United States Constitution. *Graham v. Florida*, 560 U.S. 48, 74-75 (2010).[2]

In 2013, Graham's case was remanded to the circuit court, and he was resentenced to twenty-five years' imprisonment.

In response to *Graham* and *Miller*, the Florida Legislature enacted new juvenile sentencing laws in chapter 2014-220, section 1-3 Laws of Florida, now codified in sections 775.082, 921.1401, and 921.1402, Florida Statutes. The new laws relate to juveniles convicted of "certain serious felonies" and require courts to conduct an individualized sentencing hearing before sentencing juvenile offenders to life imprisonment.

The laws also allow juvenile offenders to seek judicial review of their sentences after fifteen, twenty, or twenty-five years—conditioning when an offender may receive a sentence review on (1) the nature of the offense, (2) criminal intent, and (3) the length of the sentence. The first classification is based on the nature of the offense and distinguishes primarily between juveniles who commit offenses under section 782.04, Florida Statutes (the murder statute), and juveniles who commit offenses not included in section 782.04. The second classification is based on criminal intent. For juvenile offenders convicted of a homicide offense under section 782.04, the statute distinguishes between those offenders who actually killed, intended to kill, or attempted to kill

---

[2] Two years later, in *Miller v. Alabama*, 567 U.S. 460 (2012), the Supreme Court held that sentencing juvenile homicide offenders to life sentences without the possibility of early release also violated the Eighth Amendment.

their victims and those offenders who did not.[3]   The final classification is based on the length of the sentence imposed. Sentence review is available only if the juvenile has been sentenced to a term exceeding  fifteen, twenty, or twenty-five years, depending on the first two classifications. The following chart summarizes, in relevant part, how the different classifications affect a juvenile offender's entitlement to a sentence review:

| | | Intent | |
|---|---|---|---|
| | | *Did not kill, intend to kill, or attempt to kill* | *Killed, intended to kill, or attempted to kill* |
| **Offenses under § 784.02** | Capital felony | Sentence review after 15 years | Sentence review after 25 years |
| | Life felony & first-degree felony | If sentenced to <u>more</u> than 15 years, review after 15 years | If sentenced to <u>more</u> than 25 years, review after 25 years |
| **Offenses not under § 784.02** | Life felony or felony punishable by life | *No consideration of intent* | |
| | | If sentenced to 20 years or more, review after 20 years  Eligible for a second review after 10 years | |

In 2016, the Florida Supreme Court clarified "that the constitutional prohibition against cruel and unusual punishment under *Graham* is implicated when a juvenile nonhomicide offender's sentence does not afford any 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation'" during his or her natural life. *Henry v. State*, 175 So. 3d 675, 680 (Fla. 2015).  Our supreme court continued that "*Graham* applies to ensure that juvenile nonhomicide offenders will not be sentenced to terms of imprisonment without affording them a meaningful opportunity for early release based on a

---

[3] A jury must make this finding.  *Williams v. State*, 242 So. 3d 280, 282 (Fla. 2018).

demonstration of maturity and rehabilitation." *Id*. at 680 (citing *Graham*, 560 U.S. at 75).

After *Henry*, the Florida Supreme Court held that all juveniles whose original sentences violated *Graham* were entitled to resentencing under the new juvenile sentencing laws. *Kelsey v. State*, 206 So. 3d 5, 8-9 (Fla. 2016).

*Order on appeal*

In 2017, Graham moved for resentencing under the new laws. Graham argued that although he was convicted of a nonhomicide offense, he was entitled to judicial review of his sentence after fifteen years—not twenty years—because the new juvenile sentencing laws unconstitutionally distinguish between juvenile homicide offenders and juvenile nonhomicide offenders. Graham claimed that under section 775.082, juvenile homicide offenders are entitled to either a fifteen- or twenty-five-year sentence review while juvenile nonhomicide offenders convicted of categorically "less serious" crimes are entitled only to a twenty-year review. Graham argued this was an arbitrary classification and disproportionately punished less culpable offenders.

In response to Graham's constitutional argument, the State argued that the classifications have a rational basis:

> Murder can be a very spontaneous act, even if it is premeditated, or it can be ancillary to other criminal activity that is going on, such as with a felony murder case. Nonmurder cases more often will evidence some different degree of criminality or criminal pattern on behalf of the defendant, and it is not unreasonable for the legislature to have concluded under those kinds of circumstances they would require a longer period of time before they thought it appropriate for a court to review the potential rehabilitation of a defendant.

The trial court agreed with the State and resentenced Graham to twenty-five years' imprisonment. Graham was provided a sentence review after twenty years under section 775.082(3)(c). This appeal followed.

5

*Analysis*

Graham alleges that section 775.082 violates equal protection, both facially and as applied to him, because it arbitrarily grants juvenile homicide offenders an earlier sentence review and, with no conceivable explanation, requires that juvenile nonhomicide offenders wait longer for a sentence review. Graham argues that had his accomplice killed the restaurant manager during the robbery of the restaurant, rather than merely injuring him, Graham would be entitled to a review of his sentence after fifteen years. Instead, and only because his accomplice did not kill the restaurant manager, he was entitled under the new laws to a sentence review after twenty years. Graham contends that this outcome is irrational, and the statute's unequal treatment "frustrates fundamental government objectives by incentivizing victims' deaths with lighter punishments." We disagree.[4]

## A. Equal Protection

"In the absence of a fundamental right or a protected class, equal protection demands only that a distinction which results in unequal treatment bear some rational relationship to a legitimate state purpose." *Duncan v. Moore*, 754 So. 2d 708, 712 (Fla. 2000). Section 775.082 does not affect a fundamental right or suspect class; therefore, the rational basis test applies. *Jackson*, 191 So. 3d at 427. Under rational basis review, "a statute must be upheld if there is any conceivable state of facts or plausible reason to justify the classification, regardless of whether the legislature actually relied on such facts or reason." *Id.* The statutory classification does not have to affect the permissible goal in the best possible manner, rather some degree of inequality is permitted. *McElrath v. Burley*, 707 So. 2d 836, 839 (Fla. 1st DCA 1998). Stated differently, "[a] statutory classification will be deemed to violate equal protection only if it causes different treatments so disparate as relates to the difference in classification so as to be wholly arbitrary." *State v. Lewars*, 259 So. 3d 793, 802 (Fla. 2018) (quotations omitted).

---

[4] Our review is de novo. *Jackson v. State*, 191 So. 3d 423, 436 (Fla. 2016).

The legislature has wide discretion in creating statutory classifications, and its role in establishing the appropriate sentences for criminal offenses is especially important. *See Horsley v. State*, 160 So. 3d 393, 395 (Fla. 2015). Reviewing courts "should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *Peters v. State*, 128 So. 3d 832, 849 (Fla. 4th DCA 2013).

Our review of the juvenile sentencing laws reveals that section 775.082 serves a legitimate governmental purpose and that there is a plausible reason justifying the classifications between juvenile homicide and nonhomicide offenders. The laws serve a permissible goal—to remedy the federal constitutional infirmities in Florida's sentencing laws identified in *Graham* and *Miller*.

> [Chapter 2014-220] was enacted in direct response to the Supreme Court's decisions in *Miller* and *Graham*, and it appears to be consistent with the principles articulated in those cases—that juveniles are different as a result of their "diminished culpability and heightened capacity for change"; that individualized consideration is required so that a juvenile's sentence is proportionate to the offense and the offender; and that most juveniles should be provided "some meaningful opportunity" for future release from incarceration if they can demonstrate maturity and rehabilitation.

*Horsley*, 160 So. 3d at 406 (citing *Miller*, 567 U.S. at 479).

Section 775.082, as amended, bears a rational relationship to the legitimate government objectives summarized in *Horsley* and as explained in *Miller* and *Graham*. The legislature, in the exercise of its police power, conditioned how long a juvenile must wait for a sentence review on not just the statutory nature of the juvenile's offense, but also the juvenile's criminal intent and the length of the sentence imposed. There is a plausible reason for distinguishing between juvenile nonhomicide offenders and juvenile homicide offenders who did not kill, intend to kill, or attempt to kill: the lack of intent to kill makes the latter category

7

of juveniles less culpable and therefore more susceptible to rehabilitation than those juvenile nonhomicide offenders who had criminal intent but whose offense did not involve a death. It is rational to distinguish between a juvenile convicted of a homicide offense but who had no knowledge or intent to cause death, such as the getaway driver of a robbery leading to death but who had no knowledge that his codefendant carried a weapon, and a juvenile convicted of a serious nonhomicide offense such as attempted armed robbery like Graham who knowingly accompanied his armed accomplice into the restaurant to rob the victim.

The disparate treatment between juvenile homicide and nonhomicide offenders is also rationally related to the goal of proportionate punishment and ensuring that a juvenile's sentence is commensurate with not only the offense but the offender (i.e., examining criminal intent). In recognition of this goal, the legislature provides juvenile nonhomicide offenders like Graham a second opportunity for sentence review, while juvenile homicide offenders convicted under section 782.04 only have one opportunity. §§ 775.082(3)(c), 921.1402(2)(d), Fla. Stat.

Graham asserts that under section 775.082, juvenile homicide offenders are rewarded with an opportunity for a sentence review five years earlier simply because their victim died. This argument fails for two reasons. First, section 775.082 does not entitle *all* juvenile homicide offenders to an earlier opportunity for a sentence review—the earlier opportunity for review is available only to juvenile homicide offenders who a jury has found lacked the intent to kill. Second, *Graham* and its progeny do not require that juvenile offenders convicted of nonhomicide offenses punishable by life be entitled to release *earlier* than juvenile offenders convicted of homicide offenses. Instead, all that is required is that juvenile nonhomicide offenders receive "some meaningful opportunity to obtain release":

> A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. *It is*

8

*for the State, in the first instance, to explore the means and mechanisms for compliance.*

*Kelsey*, 206 So. 3d at 11 (emphasis added) (quoting *Graham*, 560 U.S. at 75).

Contrary to Graham's arguments, the classifications in section 775.082 are rationally related to a legitimate state purpose. Based on more than just the statutory nature of the offense, the classifications ensure that entitlement to the required sentence review is commensurate with the juvenile's intent and the length of the underlying sentence.

## B. As-applied challenge

Graham also alleges that section 775.082 is unconstitutional as applied to him. To succeed, Graham must show (1) that he was treated differently under the law from similarly-situated persons, (2) that the law intentionally discriminates against him, and (3) that there was no rational basis for the discrimination. *Miller v. State*, 971 So. 2d 951, 953 (Fla. 5th DCA 2007). Graham argues that his conduct and intent would have been the same even if his accomplice killed the restaurant manager. He asserts that despite identical conduct, identical intent, and a more desirable outcome, section 775.082 violates his right to equal protection because it requires that he wait five years longer for a sentence review just because his accomplice did not kill the restaurant manager.

Graham is incorrect. Section 775.082 does not treat him differently from similarly-situated persons. He was convicted of a first-degree felony punishable by life, and his crime caused no death. The statute treats all juvenile offenders who commit first-degree felony offenses punishable by life that do not cause death the same—if they are sentenced to twenty years or more, then they are entitled to a review of their sentence after twenty years, and with a second review after ten years. § 775.082(3)(c), Fla. Stat.

Finally, we reject as wholly speculative and irrelevant Graham's argument that he would have been entitled to a sentence review five years earlier if only his accomplice had killed the victim. Under those facts, it is unknown what Graham may have

done differently, what offense Graham would have been charged with,[5] whether Graham would have pleaded or gone to trial, what offense he would have been convicted of, what intent the jury may have found Graham had in committing the crime, and what sentence he would have received. In considering his as-applied challenge to the constitutionality of the juvenile sentencing laws, we consider only those facts before us. *See generally Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973) (noting that except in limited circumstances, such as the area of the First Amendment, courts should scrutinize the constitutionality of a statute only as applied to the facts before it). Those facts show that Graham was treated no differently than any other juvenile nonhomicide offender who committed a serious first-degree felony offense punishable by life.

AFFIRMED.

BILBREY and KELSEY, JJ., concur.

———————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————

Henry M. Coxe, III, of Bedell, Dittmar, DeVault, Pillans & Coxe, P.A., Jacksonville; Bryan S. Gowdy and Daniel Mahfood of Creed & Gowdy, P.A., Jacksonville, for Appellant.

Ashley Moody, Attorney General, Tallahassee, for Appellee.

---

[5] As discussed at oral argument, had Graham's accomplice killed the restaurant manager, the State could have charged him with the nonhomicide offense of attempted armed robbery *and* the homicide offense of felony murder. *See Lukehart v. State*, 776 So. 2d 906, 922 (Fla. 2000) (holding that double jeopardy principles do not prohibit a defendant from being separately convicted for felony murder and the underlying felony). A conviction for felony murder may have entitled Graham to a twenty-five-year sentence review.

10