# Supreme Court of Florida

_____

No. SC18-964
_____

**LINDA PEDROZA,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

March 12, 2020

LAWSON, J.

This case is before the Court for review of the decision of the Fourth District Court of Appeal in *Pedroza v. State*, 244 So. 3d 1128 (Fla. 4th DCA 2018), which certified conflict with the decisions of the Second and Fifth District Courts of Appeal in *Cuevas v. State*, 241 So. 3d 947 (Fla. 2d DCA 2018); *Blount v. State*, 238 So. 3d 913 (Fla. 2d DCA 2018); *Mosier v. State*, 235 So. 3d 957 (Fla. 2d DCA 2017); *Alfaro v. State*, 233 So. 3d 515 (Fla. 2d DCA 2017); *Burrows v. State*, 219 So. 3d 910 (Fla. 5th DCA 2017); *Katwaroo v. State*, 237 So. 3d 446 (Fla. 5th DCA 2018); and *Tarrand v. State*, 199 So. 3d 507 (Fla. 5th DCA 2016). We have jurisdiction. *See* art. V, § 3(b)(4), Fla. Const.

The issue presented by this case is whether Pedroza's forty-year sentence for second-degree murder is unconstitutional under the Eighth Amendment to the United States Constitution as interpreted and applied in *Miller v. Alabama*, 567 U.S. 460 (2012).[1] We hold that Pedroza has not established a *Miller* violation and, accordingly, is not entitled to relief. In so holding, we conclude that, to the extent this Court has previously instructed that resentencing is required for all juvenile offenders serving sentences longer than twenty years without the opportunity for early release based on judicial review, it did so in error.

## BACKGROUND

At the age of seventeen, Linda Pedroza, along with her twenty-three-year-old boyfriend, planned and carried out the murder of her mother by strangulation. Pedroza was charged with first-degree murder but pled guilty to second-degree murder in exchange for a forty-year sentence. Years later, Pedroza challenged that sentence as cruel and unusual punishment under *Miller*.

*Miller* was the progeny of *Graham v. Florida*, 560 U.S. 48, 74 (2010), in which the Supreme Court had held that a sentence of life imprisonment without the possibility of parole is cruel and unusual punishment and therefore a violation of

---

1. Pedroza does not make a claim based on the Florida Constitution. Regardless, the Florida Constitution's "cruel and unusual punishment" provision does not provide any greater protection than the United States Constitution as interpreted by the United States Supreme Court. Art. I, § 17, Fla. Const.

the Eighth Amendment when imposed on a juvenile for a nonhomicide offense. The *Graham* Court explained that, although states are "not required to guarantee eventual freedom" to juvenile nonhomicide offenders, they may not sentence these offenders to life imprisonment without affording them "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." 560 U.S. at 75. The *Graham* holding was extended in *Miller* to invalidate sentencing schemes that mandated life without parole for juveniles convicted of homicide offenses. 567 U.S. at 465.

Unlike the *Graham* decision with respect to juvenile nonhomicide offenders, the *Miller* decision did not "foreclose a sentencer's ability" to sentence a juvenile homicide offender to life without parole. *Id.* at 479-80. However, it instructed that before doing so the sentencer must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480. Although the sentencing scheme at issue in *Miller* was one that mandated life without parole for the first-degree murder at issue, the Supreme Court later explained that *Miller* did more than invalidate such mandatory schemes: it "rendered life without parole an unconstitutional penalty for 'a class of offenders because of their status'—that is, juvenile offenders whose crimes reflect the transient immaturity of youth," as distinguished from "the rare juvenile offender whose crime reflects irreparable corruption." *Montgomery v. Louisiana*,

136 S. Ct. 718, 734 (2016) (quoting *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989), and then *Miller*, 567 U.S. at 479-80). The Supreme Court instructed that, for juvenile homicide offenders not found irreparably corrupt, sentencing must leave them with "hope for some years of life outside prison walls." *Id*. at 737.

After the Supreme Court decided *Miller* and this Court determined that the related holding of *Graham* is not limited to sentences denominated "life" but also extends to term-of-years sentences that ensure imprisonment throughout a juvenile offender's natural life, *Henry v. State*, 175 So. 3d 675, 679-80 (Fla. 2015), Pedroza filed a motion to correct an illegal sentence. Pedroza argued that her sentence violates the Eighth Amendment under *Miller* because it is a lengthy term of years imposed without individualized consideration of her youth. The State defended Pedroza's sentence on the ground that it is not a life sentence or a de facto life sentence, pointing out that Pedroza will be fifty-five years old on the date she is scheduled to be released from prison. The trial court agreed with the State and denied Pedroza's motion. Pedroza appealed to the Fourth District, which affirmed under its own precedent in *Hart v. State*, 246 So. 3d 417 (Fla. 4th DCA 2018) (en banc), and concluded that there was no "clear, binding Florida Supreme Court decision that requires resentencing." *Pedroza*, 244 So. 3d at 1129.

In addition to upholding Pedroza's sentence, the Fourth District certified conflict with several decisions of other district courts. *Id.* Most of these decisions

required resentencing from term-of-years sentences equal to or lesser than Pedroza's sentence and were driven by language in our decisions in *Kelsey v. State*, 206 So. 3d 5, 10-11 (Fla. 2016), and *Johnson v. State*, 215 So. 3d at 1237, 1243 (Fla. 2017), which some lower courts have interpreted as mandating resentencing for all juvenile offenders serving sentences longer than twenty years without the opportunity for early release based on demonstrated maturity and rehabilitation. *Cuevas*, 241 So. 3d at 948-49 (reversing concurrent sentences of twenty-six years for nonhomicide offenses); *Blount*, 238 So. 3d at 913-14 (reversing concurrent forty-year sentences for nonhomicide offenses); *Katwaroo*, 237 So. 3d at 447 (reversing a thirty-year sentence for a homicide offense); *Alfaro*, 233 So. 3d at 516 (reversing concurrent thirty-year sentences for nonhomicide offenses); *Mosier*, 235 So. 3d at 957-58 (reversing concurrent thirty-year sentences where the juvenile offender would have been "released at age forty-six at the latest"); *Burrows*, 219 So. 3d at 911 (reversing concurrent twenty-five-year sentences for nonhomicide offenses). In addition, one of the certified conflict decisions, *Tarrand*, 199 So. 3d at 509, cited *Henry* and required resentencing from a fifty-one-year sentence, even while concluding that the sentence "was not prohibited under the Eighth Amendment."

We granted review of the instant case to resolve the certified conflict, which centers on whether there is a per se rule in Florida requiring resentencing of all

juvenile offenders serving sentences longer than twenty years without a provision for early release based on a demonstration of maturity and rehabilitation, and ultimately to resolve the issue of whether a forty-year sentence, as a categorical matter, violates the Eighth Amendment under *Miller* when imposed on a juvenile homicide offender without individualized consideration of the offender's "youth and its attendant characteristics," 567 U.S. at 465.

## ANALYSIS

### A. Pedroza's Sentence

Our review in this case is based on construction of the federal constitution and interpretation of case law. Therefore, it is de novo. *See Henry*, 175 So. 3d at 676; *Pantoja v. State*, 59 So. 3d 1092, 1095 (Fla. 2011) (quoting *McCray v. State*, 919 So. 2d 647, 649 (Fla. 1st DCA 2006)).

Under *Miller*, a juvenile homicide offender cannot be sentenced to life imprisonment without the possibility of parole unless the sentencing court has considered the offender's "youth and its attendant characteristics," 567 U.S. at 465, and properly found the offender to be irreparably corrupt, *Montgomery*, 136 S. Ct. at 734. *See also Landrum v. State*, 192 So. 3d 459, 459 (Fla. 2016) (holding that even a discretionary sentence of life without parole violates *Miller* if the sentencing court did not take the juvenile offender's youth into account). Although the trial court in this case did not give individualized consideration to Pedroza's

youth and its attendant characteristics when deciding to sentence her in accordance with the parties' agreement, her sentence is not unconstitutional under *Miller* because it is not a sentence of life imprisonment.

Additionally, although we recognized in *Henry* that there is no Eighth Amendment distinction between a term-of-years sentence and a sentence denominated "life" when the term-of-years sentence is the functional equivalent of life without the possibility of parole, *Henry*, 175 So. 3d at 679-80, that holding does not afford Pedroza relief in this proceeding. The sentence at issue in *Henry* was ninety years long, and Henry had demonstrated that his sentence did not offer an opportunity for release before the end of his natural life. *Id.* at 676. Unlike Henry, Pedroza has not shown that her sentence is so long as to be the functional equivalent of life. Therefore, she has not established that her case implicates the Supreme Court's Eighth Amendment jurisprudence concerning juvenile sentencing to the extent that she is entitled to a remedy under *Henry*.

**B. Confusing and Erroneous Language in *Henry*, *Kelsey*, and *Johnson***

While the foregoing conclusions resolve the narrow issue presented in this case, we recognize that there has understandably been "considerable confusion" in the district courts of this state—caused largely by confusing language and dicta in our prior decisions—as to when a juvenile offender's term-of-years sentence requires resentencing under *Miller* or *Graham*. *Hart*, 246 So. 3d at 419

- 7 -

(addressing *Graham*).  This confusion stems from statements made in *Henry*, *Kelsey*, and *Johnson* regarding juvenile term-of-years sentences without a review mechanism that invoke the protections of *Graham* and *Miller*.  We address the problematic statements in each of these cases—*Henry*, *Kelsey*, and *Johnson*—in turn.

With respect to *Henry*, the following declaration has proven to be confusing when considered out of context:

> [W]e hold that the constitutional prohibition against cruel and unusual punishment under *Graham* is implicated when a juvenile nonhomicide offender's sentence does not afford any "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."

*Henry*, 175 So. 3d at 679 (quoting *Graham*, 560 U.S. at 75); *see also id.* at 680 (clarifying that the "meaningful opportunity to obtain release" discussed in the Court's holding means "a meaningful opportunity for early release based on a demonstration of maturity and rehabilitation").  Taken wholly out of context, this and other language from *Henry* has been read to mean that all juvenile sentences, no matter the length, must include an opportunity for early release to comply with the Eighth Amendment.  *See, e.g.*, *Tyson v. State*, 199 So. 3d 1087, 1088 (Fla. 5th DCA 2016).  If this were the holding, an adult sanction of four years in prison would require some type of review and release mechanism.  That is an incorrect reading of the holding.  In context, *Henry* makes clear that the Court was addressing "lengthy" term-of-years sentences that approach or envelop the entirety

- 8 -

of a defendant's "natural life." 175 So. 3d at 679. Additionally, in *Guzman v. State*, 183 So. 3d 1025, 1026 (Fla. 2016), we expressly addressed the question of whether *Graham* applies "to lengthy term-of-years sentences that amount to de facto life sentences" by summarily concluding that *Henry* had "previously answered . . . [that] question in the affirmative."

With respect to *Kelsey*, the statement that *Henry* "requires that all juvenile offenders whose sentences meet the standard defined by the Legislature in chapter 2014-220, [Laws of Florida,] a sentence longer than twenty years, are entitled to judicial review," 206 So. 3d at 8, could be understood as holding that any juvenile sentence longer than twenty years violates the Eighth Amendment. This reading of *Kelsey* was bolstered by the nonprecedential opinions of *Lee v. State*, 234 So. 3d 562 (Fla. 2018) (plurality opinion), and *Morris v. State*, 246 So. 3d 244 (Fla. 2018) (plurality opinion).[2] We now clarify that this statement in *Kelsey* was not a

---

2. Pedroza relies on additional cases from this Court as supporting this reading of *Kelsey*. With one exception, these cases were resolved with unpublished orders lacking factual detail. Although we need not discuss those cases further, as unpublished orders lack precedential value, *see Gawker Media, LLC v. Bollea*, 170 So. 3d 125, 133 (Fla. 2d DCA 2015) (noting that the court's "unpublished dispositions," though discoverable online, have "no precedential value"), we do note one unpublished order in particular, *Thomas v. State*, 177 So. 3d 1275 (Fla. 2015), because it has received attention in several cases. *See, e.g.*, *McCrae v. State*, 267 So. 3d 470, 471-72 (Fla. 1st DCA 2019); *Peterson v. State*, 193 So. 3d 1034, 1038 (Fla. 5th DCA 2016). To the extent it is proper to analyze the history of that case to discern this Court's rationale in requiring resentencing, we agree with the First District that this unpublished decision is "best read as rejecting the remedy [the First District] approved for the earlier *Miller* violation" in

holding, as determined by the Fourth District below, and that the holding in *Kelsey* was limited to the express holding stated in the opinion:

> We therefore hold that all juveniles *who have sentences that violate Graham* are entitled to resentencing pursuant to chapter 2014-220, Laws of Florida, codified in sections 775.082, 921.1401 and 921.1402, Florida Statutes (2014).

*Kelsey*, 206 So. 3d at 8 (emphasis added).

Any statement of law in a judicial opinion that is not a holding is dictum. *State v. Yule*, 905 So. 2d 251, 259 n.10 (Fla. 2d DCA 2005) (Canady, J., specially concurring) (quoting Michael Abramowicz & Maxwell Stearns, *Defining Dicta*, 57 Stan. L. Rev. 953, 1065 (2005)). "A holding consists of those propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment." *Id.* We now further discuss *Kelsey* with these principles in mind.

In *Kelsey*, we were presented with a certified question, which we rephrased to focus on deciding whether a juvenile nonhomicide offender was entitled to a second resentencing for a *Graham* violation where his first resentencing did not

---

that case. *McCrae*, 267 So. 3d at 471-72. The remaining case on which Pedroza relies to establish the validity of the dicta in *Kelsey* is *Williams v. State*, 261 So. 3d 1248 (Fla. 2019). Although *Williams* was published and yielded a majority vote on the sentencing issue, that issue was expressly and exclusively resolved by the State's concession of error, and without relevant factual detail or citation to the propositions that we reject in this case. 261 So. 3d at 1254.

provide the remedy this Court subsequently decided should be applied to *Graham* violations—that is, resentencing under chapter 2014-220. *Kelsey*, 206 So. 3d at 6-7, 10; *see Kelsey v. State*, 183 So. 3d 439, 442 (Fla. 1st DCA 2015) (asking "[w]hether a defendant whose initial sentence for a nonhomicide crime violates *Graham* . . . , and who is resentenced to concurrent forty-five year terms, is entitled to a new resentencing under the framework established in chapter 2014-220"). It was not necessary for this Court to address whether the length of Kelsey's sentence implicated *Graham*, as the narrow issue we framed when we rephrased the certified question—whether "a defendant whose original sentence violated *Graham* . . . and who was subsequently resentenced prior to July 1, 2014, [is] entitled to be resentenced pursuant to the provisions of chapter 2014-220"—was dispositive. *Kelsey*, 206 So. 3d at 6. Indeed, we made clear that the issue raised by the case was not whether the length of sentence Kelsey received on resentencing, forty-five years, was itself a *Graham* violation when we said the following:

> Kelsey represents a narrow class of juvenile offenders, those resentenced from life to term-of-years sentences after *Graham*, for crimes committed before chapter 2014-220's July 1, 2014, effective date. Kelsey argues that his sentence does not currently provide the relief specified in our previous decisions and seeks the judicial review granted to other defendants who, like him, were sentenced to terms that will not provide them a meaningful opportunity for relief in their respective lifetimes. We agree.

*Id.* at 10.

Given that the Court in *Kelsey* expressly and repeatedly stated that it was narrowly deciding only the issue framed by the rephrased certified question, and that the "decisional path" or "path of reasoning" in *Kelsey* is less than clear, it makes more sense to read the questionable language as a statement of the necessity of including judicial review and an opportunity for early release in the remedy for any *Graham* violation and not as a means of defining when an Eighth Amendment violation occurs. This reading is also consistent with language in *Johnson*, which described *Kelsey* as applying "the reasoning in *Henry* to juveniles whose life sentences had been vacated pursuant to *Graham*, but who had not been resentenced under the new juvenile sentencing guidelines." *Johnson*, 215 So. 3d at 1239.

*Johnson*, however, does not appear to be capable of the same limited reading. *Johnson* also involved a juvenile offender originally sentenced to life for nonhomicide offenses. *Id*. After *Graham* was decided, Johnson had been resentenced to 100 years in prison, a prison sentence that, "even with gain time," exceeded the juvenile offender's life expectancy "by at least five years and possibly 20 years." *Id.* at 1243-44. The Fifth District had held Johnson's new sentence to be constitutional on grounds that term-of-years sentences did not violate *Graham*. *Id.* at 1238. Because *Johnson* involved both a *Graham* resentencing and a de facto life sentence, the case could have been disposed of by straightforward application of *Henry* or *Kelsey*. Instead, the Court included an

extensive discussion of our prior precedent in which it declared that *Graham*, *Henry*, and *Kelsey* should be read together as providing that "juvenile nonhomicide offenders are entitled to sentences that provide a meaningful opportunity for early release based upon a demonstrated maturity and rehabilitation during their natural lifetimes." *Id.* at 1239.

Unlike *Kelsey*, which limits the holding to the narrowest issue presented by the facts of the case, *Johnson* clearly stands for a rule of law much broader than the facts required, going as far as announcing and then applying the following test:

> Post–*Henry*, we must ensure that a juvenile nonhomicide offender does not receive a sentence that provides for release only at the end of a sentence (e.g. a 45–year sentence with no provision for obtaining early release based on a demonstration of maturity and rehabilitation before the expiration of the imposed term, such as in *Kelsey*). Secondly, we must ensure that a juvenile nonhomicide offender who is sentenced post-*Henry* does not receive a sentence which includes early release that is not based on a demonstration of rehabilitation and maturity (i.e. gain time or other programs designed to relieve prison overpopulation). Last, we must ensure that a juvenile nonhomicide offender who is sentenced post-*Henry* does not receive a sentence that provides for early release at a time beyond his or her natural life (e.g. a 1,000–year sentence that provides parole-eligibility after the offender serves 100 years). To qualify as a "meaningful opportunity for early release," a juvenile nonhomicide offender's sentence must meet each of the three parameters described in *Henry*.

*Johnson*, 215 So. 3d at 1243. We now recede from this test and hold that a juvenile offender's sentence does not implicate *Graham*, and therefore *Miller*, unless it meets the threshold requirement of being a life sentence or the functional

equivalent of a life sentence. *See Morris*, 246 So. 3d at 245-46 (Lawson, J., dissenting).

Although the test announced in *Johnson* by its express terms applies to "a juvenile nonhomicide offender," 215 So. 3d at 1243, and Pedroza committed a homicide, we address the erroneous *Johnson* test now because the reasoning underlying the erroneous rule could be seen to apply equally to juvenile homicide offenders (like Pedroza). If we were to stand by the test announced in *Johnson*, which is a misapplication and undue expansion of *Graham*, that test would lead us to vacate a lawfully imposed sentence when not required to do so by the Constitution and not authorized by a statute, i.e., when there is no legal basis to do so. We uphold Pedroza's sentence because she has not established that it is a life sentence or the functional equivalent of a life sentence. By failing to make this threshold showing, Pedroza has failed to establish that her sentence violates the Eighth Amendment's prohibition against the imposition of a life sentence without the possibility of parole, *Miller*, 567 U.S. at 479-80, or its equivalent, *see Henry*, 175 So. 3d at 678-80, on a juvenile homicide offender whose youth has not been taken into account at sentencing.

## CONCLUSION

For the reasons explained above, we approve the Fourth District's decision to uphold Pedroza's sentence. We disapprove of *Cuevas*, *Blount*, *Mosier*, *Alfaro*,

- 14 -

*Burrows*, *Katwaroo*, and *Tarrand* to the extent they hold that resentencing is required for all juvenile offenders serving a sentence longer than twenty years without the opportunity for early release based on demonstrated maturity and rehabilitation.

It is so ordered.

CANADY, C.J., and POLSTON and MUÑIZ, JJ., concur.
LABARGA, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., dissenting.

I dissent because of the disproportionate result in this case. Linda Pedroza, originally charged with first-degree murder, pleaded guilty to the lesser included offense of second-degree murder and was sentenced to forty years imprisonment for that offense.

Ironically, if Pedroza had pleaded guilty to first-degree murder and received a mandatory life sentence, she would actually be in a better position because she would have been entitled to resentencing pursuant to *Miller v. Alabama*, 567 U.S. 460, 479 (2012) (holding that "a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" violates the Eighth Amendment), and she would have been eligible for judicial review of her sentence after twenty-five years. *See Horsley v. State*, 160 So. 3d 393, 395 (Fla. 2015)

- 15 -

(unanimously holding that "the proper remedy is to apply chapter 2014-220, Laws of Florida, to all juvenile offenders whose sentences are unconstitutional in light of *Miller*").  Instead, Pedroza, who was sentenced in 2002, is not entitled to judicial review of her sentence prior to her projected release in 2037.

Given this disproportionate result, I respectfully dissent.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions/Certified Direct Conflict of Decisions

Fourth District - Case No. 4D17-2151

(Palm Beach County)

Carey Haughwout, Public Defender, and Benjamin Eisenberg, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida,

for Petitioner

Ashley Moody, Attorney General, Tallahassee, Florida, Celia Terenzio, Bureau Chief, and Matthew Steven Ocksrider, Assistant Attorney General, West Palm Beach, Florida,

for Respondent

Bryan S. Gowdy and Daniel Mahfood of Creed & Gowdy, P.A., Jacksonville, Florida,

for Amici Curiae Taylor Hill, Anthony Wagner, Terrence Graham, and Ellis Curry

Carey Haughwout, President, Maria E. Lauredo, Chief Assistant Public Defender, and Jonathan Greenberg, Assistant Public Defender, Florida Public Defender Association, Inc., West Palm Beach, Florida,

for Amicus Curiae Florida Public Defender Association, Inc.